## Samuel Savercool v. Jesse H. Farwell.

*Contract: Delivery: Evidence: Variance.* By the terms of a contract executed January 9, 1867, one hundred thousand feet of the lumber contracted for, were to be delivered by the 15th of May following. Eighty per cent. of each lot of fifty thousand feet thereof was to be paid for on delivery, and the balance on delivery of the whole amount.

On the 9th of April following, the parties made a further agreement, by the terms of which, fifty thousand more feet, of another kind of lumber, was to be delivered, subject to inspection by a competent inspector chosen by Farwell; that the inspection of this, and the lumber mentioned in the first contract, was to be done on the dock at the place of delivery, as mentioned in the prior contract: and, further, that at least one hundred and fifty thousand feet of the lumber mentioned in the first contract was to be delivered by May 1, 1867.

In an action for the breach of said contracts, after the introduction of the first contract, it was held that the second was properly admitted in evidence. It does not change the mode or rate of payment; neither could it be assumed that the one hundred and fifty thousand feet should all be delivered at once, but in the same quantities as mentioned in the first contract.

*Contract: Parol Evidence.* Evidence was offered to show that, prior to the date of the last contract, there was a verbal agreement that the lumber mentioned in the first contract should be inspected at defendant's mill, and that a portion of it was so inspected and found correct: *Held,* that this evidence was properly excluded, all prior verbal agreements being merged in the written contract of April 9th, on the same subject, which required the inspection to be on the dock at Detroit.

*Pleadings: Variance: Evidence.* Evidence was offered to show that the inspection could not be made by the person mentioned in the contract, but that the parties agreed that another should do it, and that he did so.

*Held*, That this was competent.  That it did not constitute such a material variation of the substance of the contract as should require it to be set out in the declaration, but was merely a subsidiary matter arising in the course of its performance; neither could its proof be treated as a variance.  The defendant could have been neither misled nor surprised by it.

*Pleadings and evidence:  Contract.*  Copies of the two contracts were set out in the declaration, but it was not alleged whether the lumber was inspected or not.
The gist of the action and the only breach assigned, was the non-delivery of the lumber.  The question of actual inspection could not, therefore arise upon the pleadings.

*Evidence:  Contract, when conclusive.*  Evidence tending to show that some of the lumber was improperly rejected by the inspector, was excluded by the court.  *Held*, proper.  The inspection was conclusive upon the parties under the contracts.

*Damages:  Value, at place of delivery.*  A witness testified that the value of such lumber, at Wayne (a place eighteen miles in the interior, by rail, from Detroit), was $30 per thousand feet; but that it was higher in Detroit, the place of delivery, though he did not know the price in Detroit.  *Held*, that this was competent evidence, and could not prejudice defendant.

*Contract:  Evidence:  Fault of Plaintiff.*  The defendant offered evidence tending to show that a portion of the lumber which was rejected by plaintiff, complied with the requirements of the contract; that this lumber was brought in and unloaded under plaintiff's orders, and that he declined to inspect a quantity of the one inch sycamore lumber, because there was thin lumber on top of it.
*Held*, That, if this thin lumber interfered with or prevented inspection, plaintiff was held responsible for it, and should have removed it; and by failing to do so, before he brought his action, he absolved the defendant from this stipulation of the contract, and left him at liberty to prove, if he could, the quantity of such lumber, and that it was such as met the calls of the contract.

*Heard July 13th.  Decided October 7th.*

**Error** to Wayne Circuit.

This was an action of assumpsit to recover damages for a breach of contract to deliver lumber.

The declaration set forth two different contracts.  The common counts were also added.

The defendant pleaded the general issue, and gave notice of recoupment.

On the trial the plaintiff offered in evidence a contract, bearing date January 9, 1867, made and executed by S. Savercool and J. H. Farwell, by the terms of which, said Savercool agreed to deliver to said Farwell on the Michigan Central Rail Road dock, in Detroit, 'one hundred thousand feet of boards, twelve and fourteen feet long, one inch thick, and thirteen inches wide:  One hundred thousand feet of

boards twelve and fourteen feet long, five-eighths of an inch thick, and seven inches wide: All to be edged and entirely clean, and piled in cross piles as fast as sawed. One hundred thousand feet to be delivered as above by the 15th of May, 1867, and the balance of one hundred thousand by the 15th of June following.

Said Farwell was to pay for said lumber as follows: $20 per one thousand feet for the inch lumber, and $16 per thousand feet for the five-eighths.

Payment to be made as follows:

Eighty per cent. on each lot of fifty thousand, and the balance on the delivery of the whole amount, as above stated.

Said lumber to be inspected by W. E. Warriner, or some competent inspector whom he might choose.

Plaintiff then offered in evidence, under objection, another contract dated April 9, 1867, by the terms of which said Savercool agreed to deliver to said Farwell the following lumber at the dock of the Michigan Central Rail Road Company: Fifty thousand feet of white wood board, subject to inspection, and also that said Farwell should receive said lumber, and pay said Savercool the sum of $25 per thousand feet, and that this, and the lumber mentioned in the previous contract, was to be inspected on the dock at the place of delivery; at least one hundred and fifty thousand feet of the lumber mentioned in the previous contract was to be delivered by May 1, 1867.

Plaintiff's counsel then offered evidence tending to show the amount of lumber received by plaintiff under said contract; the sums of money advanced to defendant by plaintiff; and the damage to plaintiff by the non-delivery of a portion thereof under the contract.

On the cross-examination of said plaintiff, he testified, tending to show that there was not an agreement subsequent to that of January 9th; that said lumber should be inspected at defendant's mill, in lots of fifty thousand; that

he did not go to defendant's mill and inspect part of said lumber, and did not, at that time, pass upon it, and say it filled the contract.

Counsel for defendant then asked the plaintiff:

*Question:* In looking over this lumber at defendant's mill, did you not tell Mr. Huntress that it was all right, and would fill the contract (referring to the one inch sycamore)? To which question counsel for plaintiff objected as irrelevant. The court sustained the objection, and counsel for defendant then and there excepted.

Counsel for plaintiff then re-examined said plaintiff and offered evidence tending to show that defendant agreed with plaintiff, that one Hough should inspect said lumber, in the place of Warriner, who could not attend to it, and that Hough did inspect the same, under a written order from the defendant, and rejected a large amount thereof. Counsel for defendant objected, because the said evidence would tend to prove another and different contract from that set up in the plaintiff's declaration; which objection was overruled, and said evidence admitted. Defendant excepted.

Counsel for plaintiff, as part of his testimony to prove damages, called Samuel Walker, who, being duly sworn, testified that he was engaged in the lumber business, and had been for a number of years; that he lived and did business at Wayne, Michigan, and that he knew the market value of white wood lumber of the description in contract "B," on September 1, 1867; and that the market value was $30 per thousand. On cross-examination, witness stated that he did not know the market value at Detroit, but that $30 was the market value in Wayne, and that it would be higher in Detroit.

Plaintiff then rested, and counsel for defendant called Joel S. Huntress, who, being sworn, testified that he had sawed and examined, at the defendant's mill, the quality of the one-inch sycamore, in said contracts mentioned. Counsel for defendant then offered evidence by said witness, tending

to show that there was an agreement by parol, prior to April 9, 1867, between plaintiff and defendant; that the lumber mentioned in the contract of January 9, should be inspected at defendant's mill; that plaintiff did inspect a portion thereof at that place prior to said April 9, and pronounced it correct.

Counsel for plaintiff objected on the ground of irrelevancy. The objection was sustained, and the defendant excepted.

Counsel for defendant then offered evidence tending to show that defendant had sent into Detroit, and delivered on the dock according to contract, the whole quantity of sycamore lumber within the time prescribed by the contract, and of quality and description in all respects as called for by said contracts; to which counsel for the plaintiff objected on the ground that the inspection of the inspector was binding and conclusive on the parties in the absence of fraud, which objection was sustained, and defendant excepted.

The defendant then introduced further evidence tending to show that defendant had not received or accepted any of the lumber which was rejected by the inspectors, or any of that which was delivered at the dock and not inspected. There was also evidence in the case tending to show that the lumber was brought in and unloaded under plaintiff's orders; that the plaintiff declined to inspect a quantity of the one-inch sycamore lumber, because there was thin lumber on top of it; and defendant's counsel offered evidence tending to show the amount of said lumber which was not inspected, and that it was in all respects up to the requirements, as to quality and dimensions, of the contract; to which plaintiff's counsel objected, and the court sustained the objection, and defendant excepted.

Whereupon the testimony and arguments of counsel being closed, the defendant requested the court to charge the jury,

SAVERCOOL *v.* FARWELL.

1. "That the written contract of April 9 changes the payments and mode of delivery from the manner prescribed in the contract of January 9, and alleged in the plaintiff's declaration, and that, therefore, the jury must find for the defendant," which the court refused, and the defendant excepted thereto.

The defendant also requested the court to charge the jury,

2. "That the contract for the sycamore lumber, as proved by the plaintiff, was as to the mode of inspection, a different one from that set forth in plaintiff's declaration and there can be no recovery under the declaration in this action by the plaintiff;" which the court refused, and the defendant excepted thereto.

The defendant also requested the court to charge the jury,

3. "If the jury find under the charge of the court, that the contract for the sycamore lumber, as proved, is a different contract from the one set up in the plaintiff's declaration, then the plaintiff can not recover under his declaration, and their verdict must be for the defendant;" which the court refused, and the defendant excepted thereto.

The defendant also requested the court to charge the jury,

4. "If the jury find that one Walker did not know the market value, in Detroit, of white wood, they must reject his testimony as to what such value was," which the court refused, and the defendant excepted thereto.

But the court charged that the jury were at liberty to consider the testimony of Mr. Walker, inasmuch as he testified to the value of lumber at Wayne, and that it was higher in Detroit; to which the defendant also excepted.

The jury returned a verdict for said plaintiff for damages in the sum of $1,500.

17 MICH. — F.

*D. B. & H. M. Duffield,* for plaintiff in error.

1. An agreement to pay on the happening of a certain event is rescinded by the mutual agreement of both parties that such event shall not happen.

Where no agreement. is· made as to the time when the price of goods is payable, it is payable on the delivery of the goods. — *1 Pars. on Cont. (5th Ed.) p. 535.*

And there being no agreement as to the amount to be paid on the delivery of the goods, the whole was then due and payable.

The second contract, therefore, provided for an entirely different mode of payment, both in time and amount, from that alleged in the plaintiff's declaration.

But the payment by the defendant in error, or more correctly his agreement to pay, is the consideration of defendant's promise.

The statement of the mode of payment is therefore descriptive, and must be proved literally as laid.

Any variance is fatal. — *1 Greenlf. Ev. § 68; 3 Wend. 374; 7 Johns. 322; 36 Miss. 458; 27 Ala. 542; 1 Mich. 487; 13 Id. 113.*

2. The plaintiff had sworn, on his cross-examination, that there was no agreement subsequent to that of January 9th, that the lumber mentioned in the January 9th contract should be inspected at the mill of plaintiff in error; that he did not go to said mill and inspect part of said lumber; and did not at that time pass upon it, and say it filled the contract. Such an agreement was alleged by the defendant below, and the action of defendant in error thereunder was sought to be proved. This question was entirely irrelevant.

If there had been such an agreement, and plaintiff below had acted upon it, and accepted a quantity of lumber, clearly we were entitled to show it, and if we could prove it, we had a right to cross-examine the plaintiff below

concerning it, and if he denied it, to lay the foundation of impeachment. The record shows that the agreement was sought to be proved by defendant in error, but the court excluded the evidence.

3. The declaration alleges that the sycamore lumber was to be inspected by Wm. E. Warriner, or some competent inspector whom he should choose.

No alteration or modification of this agreement is alleged.

It is a material allegation. Under it the court held us concluded by the inspection of the lumber in the absence of fraud.

There is no pretense that Warriner chose Hough to inspect said lumber. Hough's authority to inspect was based by the defendant below solely on the alleged subsequent agreement between the parties.

If the plaintiff below set out this agreement for inspection with particularity, he must prove it as laid; otherwise, and as was actually the case, the plaintiff would, on the trial, put in testimony to prove an agreement of the defendant below to abide by an inspection of which he has no knowledge, and has no reason to expect would be sought to be proved.

The following authorities conclusively sustain this point *1 Greenlf. Ev.* §§ *66, 69; 10 Johns. 418; 3 Day's R. 283; 36 Miss. 458, above cited; 5 Blackf. 162; 8 Barb. 327; 3 La. 418; 15 Id. 365.*

4. Defendant below offered to show that there was a parol agreement, prior to April 9th, that the lumber mentioned in the contract of January 9th should be inspected at defendant's mill, and that plaintiff below did inspect a portion thereof, at that place prior to April 9th, and pronounced it correct. This the Circuit Judge excluded. There was no place of inspection mentioned in the contract of January 9th.

Even if there is anything in that contract fixing a place of inspection, it might be changed by a subsequent and distinct oral agreement. — *1 Greenlf. Ev.* § *303.*

Especially where such new agreement was partly performed by the plaintiff below. — *Id.* § *304.*

5. The inspection was not conclusive.

We readily admit the correctness of the doctrine that where parties refer the decision of any matter to a third person, and agree that his decision shall be final, they are bound by it.   But in this case there is no agreement that the decision of the inspector should be final.   It was simply "subject to inspection."   The inspection was not made any thing but *prima facie;* and while we admit that it was entitled to great weight, and that the jury should be instructed to accept it as correct, unless they were clearly satisfied by strong proof that it was erroneous; yet we contend that the defendant below had a right to give other evidence to the jury to show that it was not correct.

The great majority of cases which are found in the books bearing upon this point, are instances in which the referee's decision was made final by positive stipulation. These, we contend, are not in point. — *48 Penn. St. 161; 1 Comst. 318; 10 Bosw. 130.*

6. The plaintiff below having refused to inspect the lumber which was underneath the thin lumber, the defendant below had the right to charge him with that amount of lumber; and certainly to prove the amount of said lumber, and that it conformed to the requirements of the contract.   The lumber was brought in and piled under the directions of the defendant in error.

The delivery of the lumber under the control of the defendant in error, ready for inspection, and his declining to inspect, was a sufficient tender to satisfy the contract.

Plaintiff in error never received or took back said lumber, but left it where he delivered it; he could, therefore, lawfully charge the plaintiff below with that amount of

lumber. But he asks less, and simply claims the privilege of showing that said uninspected lumber was, in all respects, up to the requirements of the contract. Clearly he should be allowed to do this.—*24 Barb. 283; 14 Conn. 479; 31 N. Y. 462; 2 Watts & Sergt. 26; 5 Mass. 67.*

*Moore & Griffin,* for defendant in error.

1. Suit is brought upon two separate contracts. The latter, however, refers to the former, and modifies it. The general rule that contracts made at same time, between same parties, with reference to same subject matter, are to be construed together, applies, though the contracts are executed at different times.— *17 Ill. 466; 22 Penn. St. 454.*

Besides, nothing was done under either of these contracts until the execution of both. They may, therefore, be considered as executed at the same time, though bearing different dates.

It is necessary to set forth in the Declaration only such portions of a contract as affects a recovery. The same rule applies to a count.

Construing them together, each contract is declared upon, according to its legal effect. This is sufficient by the well established rules of pleading.

2. The inspection of Warriner was a condition precedent to the acceptance of the lumber. This provision was mainly for the benefit of defendant in error, who was not willing to rely on his own judgment. Such inspection was conclusive.— *24 Me. 215; 25 Id. 401; 29 Id. 346; 3 Watts and Serg. 365; 22 Ill. 53; 6 McLean, 248; 4 Duer, 295; 4 Cush. 378; 9 Bos. 1; 1 Blackf. 476; 22 Eng. L. and Eq. 557.*

Any other view of the contract would nullify the provision as to inspection.

If the language of a contract is ambiguous, it must be understood in a sense in which it will have some effect. In its construction, courts will endeavor to avoid what is

unequal, unreasonable, and improbable.—*8 Porter* (*Ala.*), *497; 16 La. An. 201; 11 Vt. 490; 14 Id. 311.*

CHRISTIANCY J.

The contract of April 9 was properly admitted in evidence. It did not change the mode or rate of payment mentioned in the prior contract of January 9. By the prior contract one hundred thousand feet of the lumber were to be delivered by the 15th of May, and payments to be made as follows: Eighty per cent. on each lot of fifty thousand feet, and the balance on delivery of the whole amount. By that of April 9, one hundred and fifty thousand feet of the lumber mentioned in the prior contract were to be delivered by the first day of May, and it is silent as to the mode or rate of payment for this lumber.

We can not assume, as the counsel for the plaintiff in error seems to have done, that the one hundred and fifty thousand feet must all be delivered at once. On the contrary, it is much more probable, in the ordinary course of such business, that it would be delivered in parcels less than the whole; and there would then be successive periods in the course of delivery, at which the lumber delivered would amount to fifty thousand feet.

If this would not be so under the last contract, it would not under the first.

If the quantity delivered up to any particular period amounted to more than fifty thousand feet, the excess would not be counted until it amounted to another fifty thousand.

The court properly excluded the evidence tending to show that prior to April 9 (the date of the last contract), there was an agreement by parol between plaintiff and defendant that the lumber mentioned in the contract of January 9 should be inspected at defendant's mill, and that plaintiff did inspect portions of it there prior to April 9, and pronounced it correct. The contract of April 9 was

in writing, and expressly provided that this same lumber (mentioned in the contract of January 9) should be inspected on the dock, at the place of delivery in Detroit, and (in effect by reference to the contract of January 9) that the inspection should be made by W. E. Warriner, or some competent inspector he might choose. If the parties are not to be understood to have merged all prior verbal understandings or agreements in the subsequent written agreement upon the same subject matter, there can be little use and no safety in written contracts.

It seems that in attempting to carry into effect the provision for inspection, it was found that Warriner could not attend to it, and the plaintiff gave evidence tending to show that, instead of having Warriner choose an inspector, the parties themselves agreed that one Hough might inspect the lumber in place of Warriner, and that he did inspect it under a written order of the defendant. This evidence was objected to on the ground that it tended to prove another and different contract from that set out in the plaintiff's declaration, which followed the written contract, alleging that the lumber was to be inspected by Warriner, or some competent inspector he should choose.

We do not think this new substitution of one inspector for another, in the course of performing, or attempting to perform, the contract, constituted such a material variation of the substance of the contract as should require it to be set out in the declaration; nor do we think the proof of it can be treated as a variance, or that the defendant could have been surprised or misled by it. The substance of the contract, or the essential obligation created by it, was, on the one side, the delivery of certain amounts of lumber of the specified descriptions, and, on the other the payment of the agreed price. The inspection was the test agreed upon for determining whether the lumber met the calls of of the contract. It was binding, it is true, unless waived or modified by the parties. But it might be waived, in

whole or in part, or another inspector substituted, without altering the essential obligations of the contract. In an action for not accepting goods sold, where the declaration averred that the defendant bought of the plaintiff a certain quantity of rice, according to certain conditions; and it appeared in evidence that, in addition to these conditions, the rice was sold by sample; it was held not to constitute a variance, the words "*per* sample" not being a description of the commodity sold, but a mere collateral engagement that the goods should answer the description of a small parcel exhibited at the sale.—*Parker et al. v. Palmer, 4 B. and Ald. 387, and see Clarke v. Gray, 6 East, 564.*

The plaintiff, in the present case, set out copies of the two written agreements in his declaration, instead of describing them by their legal effect; but he did not allege, and the nature of the action did not require him to allege, whether the lumber was inspected or not; nor was any breach assigned upon this provision. The gist of the action, and the only breach assigned, was the non-delivery of the lumber. The question of actual inspection could not therefore arise upon the pleadings; and, as a matter of proof, the evidence of inspection would naturally come from the defendant, in the attempt to show performance.

Such incidental matters of waiver or substitution frequently arise in executing the provisions of contracts; as, for instance, a contract for the delivery of so many bushels of first quality of wheat, or so many cords of a particular kind of wood; the parties may mutually assent that a certain number of bags shall be taken for so many bushels, instead of measuring or weighing it, or that a certain number of loads shall be received for a certain number of cords; and the party who is to receive the article may assent to receive an article somewhat inferior, as a performance of a stipulation for a better. And many such unimportant changes may occur under a single contract. In the present case the parties might have agreed upon a

different inspector for each load, as it arrived.  But to require all such incidental variations, arising in the course of performance, to be stated in the declaration, as a part of the contract, would lead to great prolixity without any corresponding benefit.

It was insisted, by the defendant below, that the contracts did not make the inspection of the lumber conclusive upon the parties; and he offered evidence tending to show that some of the lumber rejected by the inspector was such as came within the description specified in the contracts. We think the court was right in excluding the evidence. If the inspection was not to be conclusive, we are at loss to perceive how it could have *any intelligible* effect under the contract.

The witness Walker, on the part of the plaintiff below, testified that he was engaged in the lumber business at Wayne (which is some eighteen miles in the interior, by rail road, from Detroit), and knew the value of such lumber at Wayne, which he stated to be $30 per thousand feet. He stated that he did not know the market value at Detroit, though it would be higher at Detroit.

This testimony bore upon the question of damages.  The defendant requested the court to charge the jury that, if they should find Walker did not know the market value of the lumber at Detroit, they must reject his testimony as to what such value was.

As it was not, and is not pretended that lumber was as high in Wayne as in Detroit, it is quite clear that the tendency of this evidence was to fix the damages below, rather than above what the plaintiff was entitled to recover.  It could not prejudice the defendant.  The instruction was, therefore, properly refused.

But we think the court erred in rejecting the evidence offered by the defendant below, showing the amount of lumber delivered which the plaintiff refused to inspect, and that it was, in all respects, up to the requirements of the

contract, as to quality and dimensions. "The evidence tended to show that the lumber was brought in and unloaded under the plaintiff's orders, and that plaintiff declined to inspect (by which we understand he declined to have it inspected as the other lumber was) a quantity of the one inch sycamore lumber, because there was thin lumber on top of it." If this thin lumber interfered with or prevented inspection, the plaintiff below would seem to have been responsible for that impediment, and should have removed it; and by failing to do so (so far as appears) before he brought his action, we think he absolved the defendant from this stipulation of the contract, and left him at liberty to prove, if he could, the quantity of such lumber, and that it was such as met the calls of the contract.

For this error the judgment must be reversed, with costs to plaintiff in error, and a new trial awarded.

The other Justices concurred.