BUCK *v.* COWARD.

1. CONTRACTS—RESTRAINT OF TRADE—LIMITATIONS.
   A provision of a contract for the sale of one's right, title, and interest in a certain business, whereby the seller agrees not to re-engage in such business, is not void for failure to limit the place wherein he is restrained from operating, if, construed in the light of the surrounding circumstances, it is apparent that only a reasonable limitation was intended.[1] *Hubbard* v. *Miller*, 27 Mich. 15, followed.

2. SAME—WAIVER.
   By consenting that the seller re-engage in business, and allowing him to carry on such business for nearly three years without objection, the purchaser waives the right thereafter to insist upon the observance of the provision.

Appeal from Branch; Yaple, J. Submitted November 14, 1899. Decided December 30, 1899.

Bill by Philo A. Buck against Richard Coward, Wallace Monroe, and William Monroe to restrain them from carrying on a certain business in violation of their agreement to refrain therefrom. From a decree dismissing the bill, complainant appeals. Affirmed.

*Charles N. Legg*, for complainant.

*John B. Shipman*, for defendants.

MOORE, J. The complainant, in the latter part of 1897, filed this bill for the purpose of restraining defendants from selling flour and buying and shipping grain in the village of Bronson. It is the claim of the defendants:

1. That the contract set up by complainant is in restraint of trade.

---

[1] As to the validity of contracts in restraint of trade without limitation of place, see note to *Gamewell, etc., Telegraph Co.* v. *Crane,* (Mass.) 22 L. R. A. 673.

2. That the business they are engaged in is not the business they sold complainant.

3. That the complainant consented to their engaging in the business they are now doing.

The testimony was taken in open court, and, after hearing it, the circuit judge dismissed the bill. The complainant brings the case here by appeal.

The contract made between the complainant and Coward and Monroe, two of the defendants, is contained in a paper dated November 28, 1894, reading as follows:

"BRONSON, MICH., Nov. 28, 1894.

"Article of agreement between Coward & Monroe, of the first part, and Philo A. Buck, of the second part, *Witnesseth:* That the parties of the first part agree to sell and deliver to the party of the second part all of their right, title, and interest in the following business, to wit, the business of selling and exchanging flour and feed. They also agree not to purchase any grain for shipment, not otherwise provided for, during the time that the party of the second part shall see fit to remain in business, or without the consent of said party. The party of the second part agrees to take all property at its cost value, and assume the rent payment, the same as the party of the first part, and furthermore pay to the party of the first part a bonus of $100 for the said business.

"In witness whereof, we have hereunto subscribed our names, this 28th day of November, 1894. This contract to take effect December 1st, 1894.

"COWARD & MONROE.
"P. A. Buck."

This was supplemented on December 1st by a paper signed by Coward and Monroe, reciting that they,—

"In consideration of the sum of —— dollars, lawful money of the United States, to them paid by Philo A. Buck, of Bronson, Branch county, Michigan, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, his executors, administrators, or assigns, all the flour and feed and one flour bin, according to a bargain entered into between the parties on the 28th day of November, 1894. It is further agreed that the said Richard Coward and Wallace

Monroe, in consideration of one hundred dollars, paid by the said Philo A. Buck, that they will not enter into the business of grain dealers, and all seeds, or the products of grain, without the consent of the said Philo A. Buck,—belonging to Richard Coward and Wallace Monroe, and now in their possession at the store owned by John T. Holmes, in the village of Bronson; to have and to hold the same unto the said party of the second part, his executors, administrators, and assigns, forever," etc.

It will be observed that the contract does not limit the place in which Coward and Monroe were not to do business, but we do not think that for that reason it can be said to be in restraint of trade. The case of *Hubbard* v. *Miller*, 27 Mich. 15, is on all fours with the case which complainant claims exists here. A reference to that case makes it unnecessary to say more about that feature of this case.

It is conceded, in the brief of the solicitor for the complainant, that the evidence does not show that defendants are buying and shipping grain contrary to their agreement. It is the claim of Coward and Monroe that the retailing of flour by them was but a small part of their business at the time they sold their business to the complainant. It is their claim that, while they were handling thousands of pounds of flour daily in their exchange business, they had not, in all, sold at retail a dozen sacks of flour, and that the retailing of flour could not be said to be a portion of the business which was sold. It is also their claim that they bought at chattel mortgage sale a grocery stock, containing in the stock flour, which was sold at retail, and that the only way in which they have sold flour was to continue to retail it in connection with the grocery stock. They assert that complainant consented to their doing this, and that sometimes they would get flour from Mr. Buck for their customers, and he would do the same thing for his customers, and that he made no objection, for nearly three years, to their retailing flour in connection with their grocery stock. Mr. Buck denies that he ever consented to the defendants' handling flour in the manner they did,

but he admits on cross-examination that, nearly three years before this suit was brought, he had some talk with Mr. Coward to the effect that, if they would procure their flour of him, he would submit to their handling flour. The witnesses were before the court.   He had a great deal better opportunity to know who of them were truthful. We are inclined to think it is shown that complainant gave his consent to what was done by defendants.

The decree of the court below in dismissing the bill is affirmed, with costs.

The other Justices concurred.