McLEOD *v.* HUNT.

1. WRITTEN CONTRACTS—PAROL EVIDENCE—PURCHASE PRICE OF LANDS.

A written contract, containing an unqualified promise to pay a certain sum, cannot be varied by proving a parol promise to pay a less sum. So *held* where the vendee in a land contract sought to show that the purchase price and the down payment specified therein were each $200 in excess of the amounts actually agreed on, the larger sums having been inserted at the request of the vendor, with a view to inflating the value of his adjacent property.

2. LAND CONTRACTS—BREACH—DAMAGES.

A recovery cannot be had for the breach of a building restriction in a land contract in the absence of proof of damage resulting therefrom.

3. APPEAL—PAYMENTS—COMPUTATION.

A contention that the court erred in permitting the jury to find that a note sued on had been paid will not be considered, where a determination of the question involves an extended computation, which appellant's counsel has not seen fit to incorporate in his brief.

4. Same—Instructions—Damages.

An instruction authorizing the jury to award damages on a
certain branch of the case "if any have been shown" is not
reversible error, though no such damages were proved, where
the court was not requested to withdraw the question from
the jury, and it does not appear that any such damages were
allowed.

Error to Wayne; Waite, J. Submitted June 6, 1901.
Decided July 19, 1901.

*Assumpsit* by Duncan McLeod against Patrick Hunt
and Mary Hunt to recover the amounts due on a land
contract and a promissory note. From a judgment for
defendants, plaintiff brings error. Reversed.

*S. E. Engle*, for appellant.

*James D. May*, for appellees.

Hooker, J. Dr. McLeod, the plaintiff, owned a large
number of city lots in Detroit. He sold two of them to
the defendants upon a written contract. It provided :

"And the said parties of the second part, in considera-
tion of the premises, hereby agree to pay to the said par-
ties of the first part, their executors, administrators, or
assigns, the sum of one thousand one hundred dollars
($1,100), as follows, viz. : Seven hundred and seventy-five
dollars on the sealing and delivery of this agreement;
twenty-five dollars on the first day of December, 1888;
twenty-five dollars on the first day of March, June, Sep-
tember, and December, 1889; twenty-five dollars on the
first day of March, June, September, and December, 1890;
twenty-five dollars on the first day of March, June, Sep-
tember, and December, 1891,—with interest at the rate of
seven per cent. per annum, to be paid semi-annually on
the whole sum from time to time remaining unpaid. And
also that they will well and faithfully, in due season, pay
or cause to be paid all taxes and assessments, ordinary
and extraordinary, for any purpose whatever, upon the
said premises or appurtenances, accruing from and after
this date, and that they will pay the interest semi-annually
at the rate of ten per cent. per annum on all sums of either

principal or interest hereon, after they become due until fully paid."

This action was brought by Dr. McLeod to recover (1) a balance of the purchase price; (2) damages for a failure to comply with the contract in respect to building upon the lots; (3) the amount due upon a promissory note given by defendants. The defendants obtained a verdict of no cause for action, and, judgment being entered, plaintiff took a writ of error.

Upon the part of the defendants it was claimed that the price agreed upon for the lots was $900, the first payment to be $575; that the contract was so drawn, when, at plaintiff's request, for the purpose of inflating the value of his other property, the defendants consented to an alteration whereby the consideration was made to read $1,100, and the first payment $775; that the sum of $575 was actually paid down, which was accepted by plaintiff as full payment for the amount to be paid down. Evidence tending to show this was admitted against objection, and counsel for the plaintiff insists that this was error, for the reason that it amounted to a parol contradiction of the terms of a written instrument.

An indorsement of an installment of interest, stating the exact amount, as "in full to date," in the handwriting of the plaintiff, was made. It is claimed by the plaintiff that the court erred in instructing the jury that the same was conclusive; but we may pass this question with the suggestion that the court qualified the above statement. What he had said appears to be a request, and related to the rate of interest, and he qualified it by saying:

"That is true, in the absence of any fraud or mistake, as a matter of fact, which might have been pleaded or shown. You will remember the testimony upon that point."

The contract was one which contained defendants' unqualified promise to make a payment of $775. It was not competent to vary the contract by proving another and a different contract by parol.

The court charged the jury that:

"It is claimed by the plaintiff that there was $200 of the first payment provided for in the contract which remained unpaid on the delivery of the contract. The purchase price mentioned in the contract is $1,100, of which $775 was to be paid upon the delivery of the contract. Now, gentlemen, it is for you to determine whether or not that was paid.

"*Mr. Engle:* Will your honor excuse me a moment?

"*The Court:* Go on.

"*Mr. Engle:* I will call your attention to the fact that there is no question about that,—whether it was paid or not,—as Mr. Hunt, the defendant, testifies positively that only $575 was paid.

"*Mr. May:* We claim, may it please the court, that there was $575 paid, but at that time Dr. McLeod gave him credit for $200, and Dr. McLeod doesn't dispute it.

"*The Court:* I understand the claim, gentlemen. Now, gentlemen, as between these parties there is no question but that the plaintiff had a right to excuse the defendant from the payment of any portion of that claim that he saw fit. If, as a matter of fact, Dr. McLeod induced the defendant to put in here $775, when under the agreement there should not have been but $575 inserted, and, in an agreement contemporaneous with the delivery of this instrument or subsequent thereto, agreed with the defendants here that $200 should not be paid, but should be credited on this account, then he is bound to do it, because he could not induce the defendants here by promises to put in a fictitious amount for his benefit, and then take advantage of that, and require the full payment, simply because it was written in the contract. Then the question is, Was that $200 discharged by an agreement between Dr. McLeod and the defendants in this case? If it was, he cannot recover for it, and you are bound then to estimate the amount due from the figures of $325, which was due at that time. Upon that point, gentlemen, you are to determine from all the testimony in the case (the testimony of Dr. McLeod and the testimony of Mr. Hunt) the manner in which they have treated this account since, when it has been under discussion,—what has been said and done in regard to it,—because if such an agreement existed at that time, procured at the instance of the plaintiff in this case, for his benefit, it would be against morals and equity to allow him to recover at this time.

" ' In this case the contract is in writing, as required to be by law, and the terms of the contract cannot be changed by parol testimony. The purchase price named in the contract is $1,100. Both parties agree that the price of $1,100 was intended to be so fixed and stated in the contract. There is no pretense by either party that the price to be written in the contract was anything else than $1,100.'

" I give you that, gentlemen, in connection with what I have already said as to the manner and method and form of the payment or discharge of any portion of that."

We cannot say that this was a proper instruction. The parties reduced the contract to writing, and agreed upon $1,100 as the price to be written in the contract. It cannot now be shown that, while they agreed to and signed the writing, it did not represent their agreement.

As to the claim of damages for the breach of the building restrictions, the court told the jury that, no damages having been proven, there could be no recovery on that branch of the case. We do not discover that plaintiff's counsel has explained how he was damaged. He passes the matter in his brief with this comment:

"*Breach of the Covenant to Build a House.* The record shows plaintiff had about 50 vacant lots there, and the stipulation to build was very valuable to him. He shows the fact,—the number of his vacant lots; the breach of this covenant is admitted, and the value of the lots shown,—all shown that could be shown,—and yet the court refused to submit the question of any damages for the breach."

We think the court was justified in taking this question from the jury.

The plaintiff claims, as to the note, that it was given on an occasion when the defendants wanted back $100 of the money they had paid on the contract, and he paid it to them, taking their note for $100. It is claimed that the court erred in allowing the jury to find that it had been paid. Whether the note had been paid or not depended upon the truth of defendant's claim that he had paid the full amount due upon the contract, and the $100 paid back

or borrowed.   Counsel has not chosen to discuss the payments made, and we must therefore conclude that the court did not err in leaving the question to the jury.   We have not felt called upon to go into a computation covering several years, and involving partial payments, especially as Dr. McLeod's letter of November 20, 1899, claimed but about $200, including what was due upon the note.

The plea is accompanied by a claim of set-off and recoupment,—the latter based upon plaintiff's omission to deed the property according to the contract.   The plaintiff had shown that the defendants filed a bill to compel the giving of a deed after this action was commenced, and there is no evidence that they suffered any damage.   The court directed the jury to give defendants damages if any had been shown, and it might include trouble and annoyance.   Our attention is not called to a request to take this question from the jury, and, if the jury followed the instructions given, as we must assume that they did, no damages were given by way of recoupment.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.