## DAVIS v. STEINGASS.

1. EVIDENCE—PAROL TESTIMONY INADMISSIBLE TO VARY TERMS OF A WRITTEN CONTRACT—GOOD WILL—CONTRACTS—INJUNCTION.

In a suit to restrain defendant from re-engaging in business alleged to be in violation of his contract not to do so, to restrain the collection of a note, and for damages, where the contract for the sale of defendant's business to plaintiffs was in writing and contained no reference to the good will or of defendant's promise not to re-enter business in opposition to them, oral testimony to the effect that defendant orally promised not to re-enter business, *held*, incompetent, since it tended to vary the terms of a written contract.

2. SAME—DAMAGES.

An award to plaintiffs for the value of damaged goods, *held*, justified by the record.

Appeal from Wayne; Mandell (Henry A.), J.   Submitted April 29, 1921.   (Docket No. 59.)   Decided July 19, 1921.

Bill by Jules J. Davis and another against William G. Steingass to enjoin the violation of a contract of

sale and for damages. Defendant brought an action at law for the amount of a note. The cases were consolidated and heard as one. From the decree rendered, both parties appeal. Modified and affirmed.

*Frederick E. McCain,* for plaintiffs.

*Bernard A. Clark,* for defendant.

BIRD, J. Defendant, Steingass, was a retail dealer in meats, canned goods and vegetables in the city of Detroit. His place of business was 2479 East Jefferson avenue. He had run the place for several years and had an established and profitable trade. Plaintiff Davis was acquainted with the handling of meats and he and his co-plaintiff, McMurtrie, concluded they would try and buy defendant's business. The first conference they had with defendant was in January, 1920. Following this they had several conferences, but nothing was concluded. Finally, on March 12th, defendant submitted to them in writing his proposition, which was as follows:

"DETROIT, MICH., March 12, 1920.

"I hereby agree to sell to Messrs. Davis & McMurtrie, my store of meats and provisions located at 2479 Jefferson avenue east, in the city of Detroit, Michigan, including the following and at the following mentioned terms.

"The entire furniture and fixtures of said store including the Ford delivery car, for the sum of thirty-five hundred dollars ($3,500) to be paid fifteen hundred dollars ($1,500) cash on taking possession of the said store and the balance of two thousand dollars ($2,000) in monthly installments of one hundred dollars ($100.00) each, without interest.

"The stock of groceries of said store to be inventoried and taken over by the said Davis & McMurtrie at the rate of seventy (70) cents on the dollar of inventoried cost.

"The stock of meats on hand to be taken over if serviceable at cost.

"I have received deposit of $25.00 upon the foregoing agreement, which is here acknowledged.

"W. G. STEINGASS."

Subsequently the following was added at the request of defendant:

"Steer heads belong to Mr. W. G. Steingass, to be taken out any time he calls for them."

Some further negotiations followed, and on April 6th plaintiffs accepted the proposition. The stock was inventoried and the initial payments were made. Beside the cash which they gave defendant, a note for $1,102.92, payable in one month, and twenty $100 notes were given. Plaintiffs assumed the management of the business and ran it four or five weeks when defendant opened an opposition store two or three blocks away. It is claimed that following this plaintiffs' business dropped off to a considerable extent and kept decreasing until they closed the store in July. Plaintiffs filed this bill reciting the purchase of the place and an agreement on defendant's part not to re-enter the same kind of business in the city of Detroit. They ask a permanent injunction to restrain defendant from carrying on such business in opposition to theirs, and to restrain the collection of the notes. They also pray for damages to the business on account of defendant's violation of his agreement and on account of damaged goods. When the case came on to be heard defendant had disposed of his competing business, so the questions were narrowed to one of damages. Defendant had, in the meantime, commenced suit to enforce the collection of his note for $1,102.92, and it was agreed that both cases should be, and they were, heard together.

Defendant filed his answer and denied that he promised not to re-enter the same kind of business in Detroit, and denied that he warranted the quality of the goods sold. He charges that plaintiffs examined the

goods and helped to inventory them, and if any of them were damaged they should have been rejected at the time.

At the conclusion of the testimony the chancellor was of the opinion that defendant promised plaintiffs, as alleged, not to re-enter business again in Detroit and awarded plaintiffs $500 damages on account thereof. In addition to this, he gave them $298.99 on account of damaged goods. These two sums were deducted from the amount of the note and defendant was given a decree for the balance.

It is insisted by both parties that this decree is wrong. Plaintiffs are satisfied with the damages awarded for the damaged goods, but complain that the damages on account of defendant's opposition business were much too small. Defendant contends that nothing should have been awarded on either claim.

The record shows that plaintiffs began their negotiations for the purchase of the stock early in the year 1920, but that up to March 12th nothing had been agreed upon. On that date defendant submitted to plaintiffs in writing his proposition of sale. This proposition recited the things which he would sell them and what he would take for them. Some further talks were had and the proposition was accepted by the plaintiffs on April 6th. When plaintiffs accepted the proposition it became their contract and both parties were bound by it. This contract makes no reference to the good will or of defendant's promise not to again re-enter business in opposition to them. It is conceded that this promise, if made, was an oral one. Defendant claims that this branch of the case was established by incompetent testimony, and that parol testimony was not competent to prove the agreement. We are impressed that the admission of this testimony was clearly an attempt to show that certain things

were included in the contract of sale other than those mentioned therein.   Defendant made it clear in the writing what he would sell them and what he would charge for them, and the admission of parol testimony showing that other things were included in the contract was a violation of the rule against the admission of parol testimony to change, alter or vary the terms of a written contract.   In considering this rule in connection with contracts 'of sale Cyc. has this to say:

"Parol or extrinsic evidence to contradict or vary the terms of the contract of sale as to the property included therein, or as to the description of such property, is inadmissible.   Thus it has been frequently held that a contract for the sale of a business cannot be added to by parol evidence of an agreement that the good will was included or that the vendor should not again engage in such business at a particular place or for a particular time."   17 Cyc., p. 608, and cases cited.

Some claim is made by plaintiffs that the written proposition was obtained to secure them in negotiating for the lease of the building and was not the real contract of purchase.   The fact remains, however, that the proposition was made and accepted by them and the deal was closed substantially in accord with it, except as they agreed otherwise with reference to minor matters.   Our view is that this testimony was inadmissible and that plaintiffs were not entitled to recover any damages on account of it.

There appears to be some basis for the award of damages on the question of injured goods and we are not disposed to disturb it.   This sum may be deducted from the amount of the note and a decree made for the balance in favor of defendant.   The decree will be modified in this respect and affirmed.   Defendant will recover his costs of this court.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.   MOORE, J., did not sit.