### ROSE *v.* WADDELL.

EVIDENCE — ORAL TESTIMONY INADMISSIBLE TO VARY TERMS OF WRITTEN CONTRACT.

In a suit to restrain defendant from re-engaging in the meat market business in a certain city, and for the reformation of the contract of sale in said regard, where the contract was in writing and contained no provision that defendant would not again engage in said business, oral testimony that defendant so promised before the making of the written contract is not admissible to vary its terms.[1]

Appeal from Clinton; Moinet (Edward J.), J. Submitted October 10, 1924. (Docket No. 64.) Decided April 3, 1925.

Bill by Delmar Rose and another against Thomas Waddell for reformation of a contract of sale, and to enjoin a violation of said contract as reformed. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

---

[1] Evidence, 22 C. J. § 1482.

*Smith, Hunter & Spaulding,* for plaintiffs.

*Lyman H. McCall,* for defendant.

STEERE, J.    Plaintiffs filed this bill of complaint in the circuit court, in chancery, for Clinton county, on January 5, 1924, asking for an injunction restraining defendant from engaging in the meat market business in the city of Charlotte in Eaton county so long as plaintiffs should be engaged in such business in said city, and to that end for reformation of an instrument in writing between the parties dated March 6, 1922, by virtue of which plaintiffs bought out the meat market business of defendant, Waddell, and his partner, Carl W. Boyer, then doing business under the firm name of Waddell & Boyer.    The instrument in its introductory paragraph states that Waddell and Boyer, parties of the first part, have heretofore conducted a meat market under their firm name in the city of Charlotte, and names plaintiffs as parties of the second part.    The next paragraph states that for the sum of $4,582.55 the parties of the first part sell, transfer, etc., to the parties of the second part "all right, title and interest in and to the stock and fixtures heretofore owned and occupied by the first parties at the corner of Lovett street and Cochrane avenue in the city of Charlotte, Michigan, when the same shall have been fully paid for."    The next paragraph acknowledges payment thereon of $2,946.45 at the time of signing the agreement, leaving an unpaid balance of $1,636.10 to be paid on or before the 1st day of January, 1923; and further stating that—

"for the purpose of securing the balance of said purchase price, the said parties of the second part hereby execute in the nature of a chattel mortgage, a lien on the fixtures included in said meat market, said fixtures being described as follows (detailing the same): which articles at the date hereof are situated in the

building formerly occupied by the first parties at the corner of Lovett street and Cochrane avenue."

The instrument then concludes as follows:

"And in consideration of the balance so due upon the purchase price, the said parties of the first part retain a lien on said fixtures in the nature of a chattel mortgage with the right at any time when they shall deem themselves insecure, or if the same shall be removed from said premises without their consent, to repossess themselves of said fixtures, and sell the same at public vendue in the event that the remainder of the purchase price shall not be paid when the same shall become due.    It is understood that said parties of the second part shall pay interest at the rate of six per cent. per annum on any part of said purchase price remaining unpaid from the date hereof.

"THOMAS J. WADDELL,
"CARL W. BOYER,
"DELMAR ROSE,
"ALLEN HOWARD.

"Subscribed and sworn to before me this 18th day of March, 1922.

"CHARLES O. ROMEY,
Notary."

This written instrument followed negotiations and an oral agreement on terms of purchase and sale of said meat market with a payment by plaintiffs of $500 on February 21, 1922, and an agreement for further payment when an inventory was taken.    Plaintiffs' contention is that it was expressly understood and agreed the vendors would not again engage in the meat market business in Charlotte while plaintiffs were so engaged, and the writing of March 6, 1922, was only intended as a chattel mortgage to secure the deferred payments; and while as drawn up by the scrivener it covered a portion of their agreement it "did not cover their contract as a whole."    Boyer went into business elsewhere and is not made a party to this suit, but after the expiration of a year defendant Waddell took steps to open a meat market

in Charlotte and this bill was filed to restrain him from doing so, also asking reformation of the writing signed by the parties to conform with the agreement as claimed by plaintiff in case the court found it necessary. The trial court granted the relief asked and defendant appealed.

The two issues presented by the record are whether there actually was any verbal agreement by defendant not to re-engage in the meat business at Charlotte while plaintiffs continued the business there, and were plaintiffs' proofs tending to show such prior parol agreement incompetent because not made a part of the written contract of March 6, 1922?

The first question is an issue of fact. Plaintiffs testified that Waddell, as well as Boyer, expressly agreed not to resume the meat market business in Charlotte so long as they remained in such business there, while Waddell and Boyer both directly deny making any such agreement, and say that when it was proposed by plaintiffs during the negotiations they positively refused to do so or to sign any agreement to that effect. Waddell testified in that connection that when plaintiffs broached the subject he told them he did not intend to do anything for a year, in the meat business or anything else, that his word "was just as good as a contract," but refused to put it in writing, and as to his oral assurance upon the subject he had fully complied with it. Plaintiffs both confirm Waddell's testimony that he refused to sign any contract not to resume business, but contend he orally agreed not to do so and asserted "his word was as good as his bond."

On the day the bargain was made the parties agreed to meet on a later date to make an inventory, which they did. After it was completed and the purchase price satisfactorily determined they went together to the office of an attorney who drew the agreement of

March 6, 1922, which they all then signed.    It is admitted he read it over to them before they signed it.    The attorney who drew the written agreement was an old practitioner of 20 years' experience.    He testified that the four parties to the agreement came to his office on the day it was dated, told him they wanted some papers drawn up and made a statement to him of what was desired, from which he "evolved the document;" that Mr. Waddell said to him in the presence of the others, "We have sold our meat market to these gentlemen; we want you to draw up a bill of sale and we want a lien on some of the fixtures." A list of the fixtures was handed to him and he then dictated the agreement to his stenographer from what they told him, reading into it the list of fixtures as given to him; that if they had suggested only a chattel mortgage was wanted he would have taken a chattel mortgage blank and on it drawn up the usual chattel mortgage; after he had completed the instrument the four parties signed it, and he explained to them that as between themselves there was a lien, and there was no need of an affidavit in connection with it unless they desired to record it, in which case an affidavit should be attached which would entitle it to record. The jurat at the bottom of the instrument was not written by him or sworn to in his office.    This testimony was not disputed by any one.

We discover no evidence of fraud, deceit or accident in the making and execution of the written agreement, aside from plaintiffs' claim that the vendor's agreement not to engage in business as stated was a part of their bargain left out by the writing.    If anybody knew it was a part of their agreement plaintiffs did, and they knew it was omitted when the document was read to them by the attorney.

The written agreement is a good contract of bargain and sale with a lien on the property sold to secure

deferred payments. It names the vendors and vendees, describes the property sold, states price, terms and times of payment. The parties were dealing at arm's length. Plaintiffs were mature men with business experience. Rose had been "in business off and on for 16 years" and testified he was "interested in seven meat markets through this section," naming six of them. Howard said he once was a street car conductor and had "been in the meat business a number of years." This written instrument which both parties signed was the concluding event of their negotiations, sale and purchase. It was not long, ambiguous, uncertain as to its object, nor in complicated language. They heard it read, signed it and were given a copy. They do not claim they ever mentioned the oral agreement now urged to or in the presence of the attorney. If defendant orally promised not to again engage in business there, as they contend, and it was to them an inducing consideration for making the purchase it properly could and should have been embodied in the written agreement. Silence on their part at that time does not open the door to parol evidence. *Seitz* v. *Machine Co.,* 141 U. S. 510 (12 Sup. Ct. 46). It was early said in this jurisdiction:

"It is a general rule that a contract cannot rest partly in writing and partly in parol; but, where a contract is reduced to writing, all previous parol contracts relating to the same matter are merged in the written contract." *Street* v. *Dow,* Har. Ch. 427.

"If the parties are not to be understood to have merged all former verbal understandings or agreements upon the same subject-matter there could be but little use and no safety in written contracts." *Savercool* v. *Farwell,* 17 Mich. 308, 319.

This rule has since been frequently repeated and applied in this jurisdiction. Some of the cases applying the rule under various conditions are as follows: *Vanderkarr* v. *Thompson,* 19 Mich. 82; *McLeod* v.

*Hunt,* 128 Mich. 124; *Walker* v. *Mack,* 129 Mich. 527; *Weickgenant* v. *Eccles,* 173 Mich. 695; *Davis* v. *Steingass,* 215 Mich. 57.	In the last named case the following from 17 Cyc. p. 608 is quoted with approval:

"Parol or extrinsic evidence to contradict or vary the terms of the contract of sale as to the property included therein, or as to the description of such property, is inadmissible.	Thus it has been frequently held that a contract for the sale of a business cannot be added to by parol evidence of an agreement that the good-will was included or that the vendor should not again engage in such business at a particular place or for a particular time."

The general rule which we think applicable here and reason for it is thus concisely stated in 10 R. C. L. p. 1018:

"Where the law requires a written instrument, or where parties adopt that mode of contracting, it is a matter of principle and policy to prevent inferior evidence from being used, either as a substitute for or an alteration of the written contract.	Having deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking, have been reduced to writing, and parol evidence is not permitted to vary or contradict the terms of such writing, or to substitute a new or different contract for it."

The decree appealed from must be vacated and a decree entered in this court dismissing plaintiffs' bill of complaint, with costs to defendant.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.