DANTO v. CHARLES C. ROBBINS, INC.

1. CONTRACTS—RE-ENGAGING IN BUSINESS—RESTRAINT OF TRADE—PUBLIC POLICY.

Agreement not to go back into fish business, not limited either as to time or place, is void as against public policy, unless some qualifying terms can be read into it.

2. SAME—PREVIOUS PAROL CONTRACT MERGES IN WRITTEN CONTRACT.

A contract cannot rest partly in writing and partly in parol, but where contract is reduced to writing all previous parol contracts relating to the same matter are merged in the written contract.

3. Same—Oral Agreements—Enforceability.

   Oral agreement not to re-engage in business similar to one sold under written agreement transferring assets and good will but not mentioning agreement of vendor not to re-engage in business is not enforceable.

4. Fraud—Breach of Contract—Evidence.

   Breach of oral agreement not to re-engage in fish business does not constitute fraud in absence of evidence tending to show that at time agreement was entered into vendor had no intention of carrying it out.

5. Contracts—Rescission—Waiver.

   Person claiming to have been defrauded must elect to rescind, or not, immediately after he discovers the fraud; by waiting more than reasonable length of time after discovery, fraud is condoned.

6. Same—Reasonable Time.

   Person has reasonable time in which to discover whether representations made to him were false; whether time taken to make such discovery was reasonable being question for jury.

7. Landlord and Tenant—Rescission—Fraud—Waiver—Estoppel.

   Where lessee waited more than three years after discovering that alleged representations inducing making of lease were false before taking action, fraud was condoned, and lessee is estopped from rescinding lease on ground of fraud.

Error to Wayne; Jayne (Ira W.), J. Submitted January 8, 1930. (Docket No. 51, Calendar No. 34,500.) Decided April 7, 1930.

Assumpsit by Abe Danto against Charles C. Robbins, Inc., and others, for rent of real estate. From a verdict and judgment for defendants, plaintiff brings error. Reversed, and new trial ordered.

*Max Kahn* (*Leonard V. Pylkas,* of counsel), for plaintiff.

*Raymond J. Kelly,* for defendants.

BUTZEL, J. Plaintiff was the owner of property known as No. 343 East High street (now Vernor highway) in the city of Detroit, Michigan, where he conducted a large fish business. The building contained refrigerating machinery, equipment for smoking fish, a warehouse, salesroom, etc. Defendants Robbins were in a similar line of business in other cities, and one of them had done business in the city of Detroit. Defendants claim that plaintiff represented that he was tired of the business and through with it forever, and willing to turn it over to them. They thereupon decided to take it over rather than start a new business as they had been doing in other parts of the country. Thereupon, on the 1st day of March, 1920, plaintiff, as lessor, and defendant Charles C. Robbins, Inc., as lessee, executed a formal written instrument for the leasing of the building with its furniture, fixtures, and equipment, for the term of ten years at a rental of $525 a month. Defendants F. R. Robbins and Charles C. Robbins became sureties upon the lease. A list of the furniture and fixtures and equipment was attached to the lease. One of its provisions was that the lessee should keep the fixtures and equipment in good repair and at the end of the term yield and deliver them up in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted. It is claimed by defendants, and denied by plaintiff, that at the time the lease was about to be executed attention was called to the fact that it did not provide that plaintiff would not re-engage in the fish business, as he had previously agreed as part of the transaction; that plaintiff thereupon said that he did not ever intend to go back into the fish business, that he was sick and tired of it, and that his word was as good as his bond. The lease itself

contains no reference in regard to plaintiff's not re-entering the fish business. There was no bill of sale of personal property or of good will executed, nor is it claimed that, aside from entering into the lease and paying rent for the premises, there was any additional consideration for an agreement on the part of plaintiff not to re-enter the fish business. Charles C. Robbins, Inc., and its successor, Robbins, Inc., remained in possession of the premises for seven years and seven months.

The testimony shows that after leasing the property to defendants, plaintiff went into the toy business, and for four years thereafter remained out of the fish business. In 1924, however, he re-entered the fish business, and opened up a new place of business on Market street, three or four blocks away from the property leased to defendants. Defendants admit that they knew in 1924 that plaintiff had re-entered the business, but that they did not protest as they did not feel his competition. In the latter part of 1926 or the beginning of 1927, however, they did feel the competition, but it was not until July 30, 1927, that they wrote plaintiff, stating that they would withhold any further payment of rent on account of a counterclaim for damages caused through plaintiff's violation of his agreement not to re-enter the fish business. They waited until October 1, 1927, before vacating the premises. They did not pay rent for the months of August and September, 1927. Plaintiff brought this suit for rent under the lease for these two months, and also for the further sum of $2,597 on account of damages to the building and the loss or ruin of equipment for which he claims defendants are responsible. Defendants claim that they were induced to lease the property by plaintiff's representation that he would not re-enter the

fish business; that said agreement had been made
by plaintiff for the very purpose of inducing defend-
ants to enter into the said lease; and that said repre-
sentations were false in that plaintiff never intended
to retire from the said business and fully intended
in a short time to re-enter it in the near vicinity.
The bill of particulars of the set-off in recoupment
claims $10,000 by reason of plaintiff's breach of this
"agreement," and the further sum of $1,000 for
necessary expenditures to the building. On Octo-
ber 2, 1928, plaintiff filed an amended declaration
substantially the same as the former one, but charg-
ing 14 months' rent, for the period that had elapsed
between the last payment of rent and the filing of the
amended declaration, increasing the claim for dam-
ages to almost $10,000. Defendants thereupon
amended their plea, by stating the claim of misrepre-
sentation more in detail. They claimed that they
had entered into the lease through the fraudulent
representations of plaintiff, and, therefore, the lease
was no longer binding on them, and repeated their
claim for damages in the amount of $1,000 for re-
pairs to the building and the further sum of $10,000
on account of the alleged misrepresentation of plain-
tiff. They set forth that when plaintiff represented
that he would not go back into the business, he fully
intended to do so in a very short time. The trial
court held that while defendants could not recover
for breach of contract by plaintiff because he re-
turned to the fish business, inasmuch as there was
no such stipulation in their written agreement, it
nevertheless was a question for the jury to deter-
mine whether defendants' entering into the lease
was induced by the false representations of plaintiff.
The court instructed the jury to determine whether
the lease was breached by the fraud of plaintiff,

and if they so decided, the lease would no longer be of any force or effect; that the jury should also ascertain what damage, if any, defendants suffered by reason of such false representations, if made. The court further instructed the jury that, in any event, plaintiff would be entitled to recover for the two months' rent for the time that defendants occupied the premises without paying rent, and that such amount might be deducted from the sum, if any, that they might find due defendants. The jury rendered a verdict for the two months' rent and interest thereon. The plaintiff has appealed from the judgment on verdict.

Plaintiff claims that inasmuch as the agreement not to go back into business was not limited either as to time or place, it was void as against public policy. Such an agreement would be void unless some qualifying terms can be read into it, as in *Hubbard* v. *Miller*, 27 Mich. 15 (15 Am. Rep. 153); *Buck* v. *Coward*, 122 Mich. 530. It, however, is unnecessary to discuss this question, as the case is determined by other issues.

We have frequently repeated and applied the rule set forth in *Street* v. *Dow*, Harr. Ch. 427, that

" * * * a contract cannot rest partly in writing and partly in parol; but where a contract is reduced to writing, all previous parol contracts relating to the same matter are merged in the written contract."

We have denied the enforceability of an oral agreement not to re-engage in a business similar to the one sold under a written agreement transferring the assets and good will but not mentioning any agreement on the part of the vendor not to re-engage in business. *Davis* v. *Steingass*, 215 Mich. 57; *Rose* v. *Waddell*, 230 Mich. 161.

Defendants claim, however, that their plea of set-off and recoupment is on the ground of fraud, which gives them the right to rescind the contract and recover for false representations. The question arises whether a failure to keep a promise to do something in the future, made with no intention to keep the promise but in order to induce another to enter into a written contract, constitutes fraud, or whether it is only a breach of a contractual obligation. In *Boston Piano & Music Co.* v. *Pontiac Clothing Co.,* 199 Mich. 141, it was held that:

"Statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud."

Defendants attempt to distinguish their case by bringing it within the rule that if at the time the representations were made there was no present intention to carry them out, it constitutes fraud. The cases enunciating this rule, however, are based upon facts which show that at the very time of making the representations, or almost immediately thereafter, statements or acts of the parties indicated that there was no intention on their part to carry out their representations. Had there been any showing of any statements made or acts done by plaintiff, at or about the time the alleged representations were made, tending to show an intention on his part not to carry them out, there would be some force in defendants' contention. At least it would be a question for the jury to determine. The record, however, is absolutely devoid of any showing whatsoever of any statement or action by plaintiff at or about the time he is alleged to have made the representations that would show an intention on his part not to carry

them out. Instead of showing any such intention present, it is shown that plaintiff remained out of the fish business for four years. This would negative such an intention. Under the circumstances, the court should have held, and so directed the jury, that there was no showing whatsoever that, at the time of the alleged representations, plaintiff did not intend to carry them out, and that his actions four years later were entirely too remote to indicate that when he made the alleged representations he had no intention of fulfilling them. At most there may have been a breach of a contract which was not reduced to writing, and, therefore, was unenforceable.

It is elementary that a person claiming to be defrauded must elect to rescind, or not, immediately after he discovers the fraud. By waiting more than a reasonable length of time after he discovers the fraud, he condones it. He can not speculate whether it is to his advantage to rescind or to continue under an agreement which he was induced to enter into by false representations. He should have a reasonable time in which to discover whether the representations were false, and if there is any question as to whether the time it took him to determine the fact is reasonable or not, it is a question for the jury to decide. In the present case there can be no question about the reasonableness of time. The court should have instructed the jury that by waiting from the year 1924, when the alleged fraud was discovered, until October 1, 1927, a period of over three years, defendants were estopped from rescinding their agreement. Defendants seek to excuse their delay by claiming that it was not until the latter part of 1926 or the beginning of 1927 that they felt plaintiff's competition. Even then, they waited until October 1, 1927, which would be an unreasonable

length of time under the circumstances. The court should have held defendants liable for the rent for the 14 months' period sued for.

The record does not show whether plaintiff was allowed to amend his declaration through the order of court, by the consent of defendants, or through the failure of defendants to object. Plaintiff claims rent for the period of 14 months instead of two months, the period for which it was due when the suit was begun. We are, therefore, unable to say whether the jury offset the plaintiff's claim for damages because of the loss or ruin of equipment against defendants' claim of damages on account of misrepresentations. For this reason we cannot order a judgment for plaintiff for the amount of rent for the entire 14 months. Under the circumstances, we are constrained to order a new trial.

The judgment is reversed, and a new trial ordered, with costs to plaintiff.

WIEST, C. J., and CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred. McDONALD, J., did not sit.