## Ira Mayhew v. The Phœnix Insurance Company.

*Unjust compromise when not to be set aside ; Refusal to pay without litigation ordinarily not legal fraud or duress.* A person knowing the facts of his case, and having means of reflection and consultation with his friends, cannot be relieved against the consequences of his own want of firmness in yielding to the arrogant claims and threats of civil litigation from an adverse party, and submitting to an unjust compromise. There is no legal fraud or duress in ordinary cases in refusing to pay or settle without litigation, and every one is expected to use reasonable firmness in claiming his rights.

*No fiduciary relation between insurance adjuster and insured, ordinarily : Fraud.* An insurance adjuster, who disputed the claims of a person insured, and occupied a hostile position throughout the negotiations, and gave his opinions falsely concerning the legal rights of the parties, on questions of law, and on facts, where the assured had the same knowledge or means of knowledge with himself, cannot be regarded as occupying any fiduciary relation which would entitle the assured to rely upon his representations; and a settlement hastily made with him under such circumstances and under a threat that payment would not be made without suit, will not be set aside for fraud. The insured was bound to inform himself of his rights before acting and to stand upon them, and failing to do so, is himself responsible for the loss.

*Costs denied : Scandalous matter in answer.* The answer made certain suggestions intimating that the fire, under which the loss happened, was caused by the fraud of complainant; and the adjusting agent, who suggested it, repeated the same insinuations in his testimony, without the least foundation in fact.

*Held,*—That the introduction of such scandalous matter should be punished by withholding costs from the defendant, although prevailing in the suit.

*Heard May 5. Decided May 9.*

23 MICH.—14.

Appeal in Chancery from Wayne Circuit.
The opinion contains a statement of the case. ·

*George H. Penniman* and *Theodore Romeyn,* for complainant.

*J. W. A. S. Cullen* and *G. V. N. Lothrop,* for defendant.

CAMPBELL, CH. J.

The bill in this cause was filed to obtain relief against a compromise made on a loss under a fire policy, claimed to have been induced by the fraud of the adjusting agent. The compromise was for five hundred dollars, which is claimed to have been but about one-fourth of the real loss.

The fraud set up consists in complainant's having been misled by the acts and representations of one Ireton, the adjuster, in whom he claims he relied, and who is said to have been aware of and abused the confidence. The misrepresentations complained of relate to what were the legal rights of the complainant concerning the classes of property covered by the policy, and the effect of leaving his college rooms closed and unoccupied more than thirty days; which the agent claimed vacated the policy. There was also a charge that by concealment of an arbitration clause, and by statements, Ireton induced complainant to believe he could get no redress except by litigation; and it was further set up that complainant was deceived by him in regard to the extent of damage to the property.

The whole burden of the case, therefore, depends on the breach of duty arising out of confidential relations requiring the utmost good faith in mutual dealings; and there is no class of cases more readily relieved in equity than such abuses. We cannot but perceive that if complainant was entitled to relief under the policy, he has not been favorably dealt with. He appears to have had a good cause of

action, and to have compromised it on terms that no high-minded business man without strong convictions of its legal doubtfulness ought to have made. But this of itself is no ground of relief, unless there has been some tangible misconduct of such a nature as to amount to a breach of legal duty, and we think, upon the facts, that the complainant is himself chiefly responsible for his misfortune.

We do not think it necessary to review the facts at length, but we will simply indicate some of the more prominent features of the case. Immediately after the loss, which occurred in September, 1868, while complainant was on a visit in Albion, he returned to Detroit, the local agent at Albion having advised him to leave the premises as they were until the adjuster should come, of whose coming complainant was to be notified. The property insured consisted of various articles used more or less directly in connection with a commercial college which complainant had conducted in Albion, up to the preceding May. On the arrival of Ireton an examination was made of the effects, and certain inventories were used for that purpose. Ireton disputed the complainant's right to any thing whatever, on account of the premises being left vacant. He also disputed the right of complainant to include various articles of furniture and stationery and books, and he disputed the amount of damage claimed to have been suffered on various articles. It does not distinctly appear whether or not complainant had made out any statement in dollars and cents except as to the stationery and text-books destroyed. Upon the other articles there seems to have been a rough estimate. Ireton did not propose to go into the details, but offered a round sum of five hundred dollars. Complainant declined and expostulated, but at last this was agreed upon and closed. During the various interviews, there is no doubt Ireton gave his opinions positively, and there is as little

doubt that complainant was considerably influenced, but not persuaded by them.    He acquiesced unwillingly, and did not consider himself justly dealt by.    The question is, how far does this show any breach of confidence ?

There was in the policy a provision for arbitration in case of difference as to the amount of loss, but not as to any other question.    Complainant during the course of the negotiations asked Ireton in regard to his rights under the policy in case he did not accept the sum offered.    He was answered that he would have to make out his proofs and present his claim at the Cincinnati office ; that it would be referred to Ireton as adjuster, and he would adhere to the terms offered ; and if finally dissatisfied he would have his legal remedy.    This was no more than any one else could have told him.    There is no reason to believe that the question of arbitration was in Ireton's mind, or that he willfully concealed the fact that such a clause was in the policy.    It was a somewhat arrogant method of expression, and one which doubtless had a certain effect on complainant, but it does not appear to us to have been intended to deceive him.    This is the only actual fraud charged beyond the general violations of confidence, which we will next refer to.

In order to ascertain how far complainant had a right to demand or expect Ireton to act as his adviser, it is necessary to look somewhat at the situation of the parties.    In regard to the actual loss and value of property, complainant had more knowledge than Ireton.    He had full means of inspection, and as to all but the library of general literature he had made that inspection.    The opinion, which Ireton expressed in regard to the damage to that, was given when neither of them had made any close examination ; and it is an important fact bearing on the transaction that complainant himself never supposed his loss to have been

nearly so great as it really was, until long after the settlement.

Besides having personal knowledge of all the material facts, complainant was in a place where he had intimate and intelligent business friends, and where he had long resided,—his departure having been recent.

Ireton was the agent of the adverse interest, and no one of ordinary experience would suppose him likely to forego the interests of his employers. Presumptively he would not be likely to stand in any different position from other persons dealing at arm's length. But he might assume a different position and thus become responsible.

He does not seem to have done this. From first to last he displayed a somewhat hostile spirit, and complainant does not appear at any time to have been convinced that his positions were right. They were, except as to some questions of valuation, assertions of law and not assertions of fact, and while Ireton undoubtedly desired to impress complainant with the difficulty of doing better, it was very far from being done with any idea on either side that he was a friendly adviser. And complainant in his testimony shows that he was influenced in his settlement by a consideration of the inconveniences and delays and expense of litigation, and a very laudable dislike of it. But this is a very different thing from mistaken confidence.

There is no satisfactory evidence that Ireton attempted to prevent complainant from seeking advice, and there is no good reason given why he did not obtain it. He was not among strangers, and he was aware of all the facts. It was his duty as a man of common prudence to seek advice from his own friends, if he had not confidence in himself. There was time and opportunity to take advice, and there was no pressing haste for a settlement at all, before the whole ground should be reviewed. None of his

legal rights could be divested by taking time for getting up the proofs in the regular way. The whole transaction was one in which there was no need for hasty steps, and it was not common prudence to attempt such a speedy arrangement without knowing at least the extent of the damage. We do not shut our eyes to the common fact that this eagerness to settle is very often stimulated by the sort of peremptory position taken in this case, and that this domineering course is a valuable auxiliary to fraud. But the law cannot interfere to supply a lack of firmness in those who allow themselves to yield to such influences, without some further element of misconduct. A man, who knows or has the means of knowing his rights, must, under ordinary circumstances, be expected to stand upon them. There is no legal fraud or duress in ordinary cases, in declining to comply with a demand without litigation.

We are, then, forced to conclude that, however unwise this hasty settlement was, it did not result from the abuse of confidence, and was not an actionable fraud.

We cannot properly pass by in entire silence the malicious insinuations in the answer in regard to the cause of the fire, which originated with the adjusting agent, and are suggested in his testimony, but are destitute of any foundation whatever. Such scandalous matter is out of place and very deserving of censure, and we must hold the company responsible for their agent's conduct.—*Forester v. Read, L. R., 6 Chancery Appeals, 40.* We shall, therefore, affirm the decree without costs of this court.

The other Justices concurred.