**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 25, 2008

AMYRUTH L. COOPER, by her Next Friend,
SHARON L. STROZEWSKI, AND LORALEE
A. COOPER, by her Next Friend, SHARON L.
STROZEWSKI,

Plaintiffs-Appellants,

v                                                                No. 132792

AUTO CLUB INSURANCE ASSOCIATION,

Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

At issue is whether plaintiffs' common-law cause of action for fraud is subject to the one-year-back rule of MCL 500.3145(1). Because the one-year-back rule only applies to actions brought under the no-fault act, and because a fraud action is not a no-fault action, i.e., an "action for recovery of personal protection insurance benefits payable under [the no-fault act] for accidental bodily injury," MCL 500.3145(1), but instead is an independent and distinct action for recovery of damages payable under the common law for losses incurred as a result

of the insurer's fraudulent conduct, we hold that a common-law cause of action for fraud is not subject to the one-year-back rule. Therefore, we reverse in part the judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

In January 1987, plaintiffs Amyruth and Loralee Cooper sustained severe brain injuries in an automobile accident that occurred while they were passengers in a car driven by their mother, Sharon Strozewski. From the time they were discharged from the hospital in October 1987, both sisters have required 24-hour attendant care. By the fall of 1989, Loralee did not need as much nursing care, but still needed attention beyond what a babysitter could provide. Amyruth has required continuous skilled nursing care, which has been provided through an agency paid by defendant, plaintiffs' automobile insurer.

At the time of the accident, Strozewski was working at GTE, earning approximately $50 a day. In the fall of 1989, defendant's claims representative, Jim Hankamp, suggested to Strozewski that she quit her job and stay at home to care for Loralee full-time. Defendant offered to pay Strozewski $50 a day, and she accepted by signing an agreement. In September 1991, the parties agreed to increase the payments to Strozewski to $75 a day. In October 1998, the rate was effectively increased to $6.50 an hour and, after that, it progressively increased up to $10 an hour by October 2000. According to defendant, as of December 26,

2

2003, defendant had paid more than $5.6 million in personal protection insurance (PIP) benefits under the no-fault act for the girls' care.

Plaintiffs filed this lawsuit in 2003, alleging that defendant had failed to pay all the PIP benefits that were due under the no-fault act because it underpaid Strozewski for the attendant care she had provided to her daughters at home over the years. Defendant filed a motion for partial summary disposition arguing, among other things, that because the amended Revised Judicature Act (RJA), MCL 600.5851(1),[1] states that the minority/insanity tolling provision applies only to actions brought under this act, the saving provision does not apply to no-fault actions to toll the one-year-back rule of MCL 500.3145(1). The trial court denied the motion, and the Court of Appeals denied defendant's application for leave to file an interlocutory appeal. Unpublished order of the Court of Appeals, entered July 1, 2004 (Docket No. 254659). Two weeks later, the Court of Appeals issued its opinion in *Cameron v Auto Club Ins Ass'n*, 263 Mich App 95; 687 NW2d 354 (2004), which held that the minority/insanity provision of MCL 600.5851(1) applies only to actions filed under the RJA and, therefore, it does not toll an action

---

[1] MCL 600.5851(1) provides:

Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852.

brought under the no-fault act. Defendant filed an application for leave to appeal in this Court, which was denied, 471 Mich 915 (2004), as was defendant's motion for reconsideration. 471 Mich 956 (2004).

In August 2004, following the Court of Appeals decision in *Cameron*, plaintiffs amended their complaint to assert a new cause of action for fraud. Plaintiffs alleged that defendant had fraudulently induced Strozewski to accept an unreasonably low compensation rate for her in-home attendant care services. Specifically, plaintiffs alleged that defendant had committed fraud by telling Strozewski: (1) that if she did not quit her job and accept $50 a day for providing 24-hour attendant care for Loralee, she would be personally responsible for paying for Loralee's nursing care; (2) that she had a parental obligation to provide attendant care for her children, which reduced defendant's legal obligation to pay attendant care benefits, and that if she did not agree to take care of Loralee for $50 a day, Loralee would have to be institutionalized; (3) that the attendant-care rate was not negotiable and that a higher rate was not available even though, in reality, defendant was paying other insureds as much as $7 an hour for providing similar attendant care; (4) that she was required to sign a contract before she could recover continuing no-fault benefits; (5) that case-management expenses were paid at the same rate as attendant-care benefits; and (6) that attendant care could not be paid to family members at the market rate or agency rate, i.e., the rate normally paid by the insurance agency to other caregivers. Plaintiffs allege that, as a result of defendant's fraud, they sustained the following damages: (1) inadequate payments

4

for attendant-care services; (2) loss of payments for case-management expenses, i.e., expenses incurred for the services rendered by a case manager; (3) loss of payments for room and board expenses; and (4) inadequate payments of no-fault benefits.

While the denial of defendant's first motion for partial summary disposition was still on appeal, defendant filed a second motion for partial summary disposition, arguing that Strozewski could not recover in-home attendant-care benefits for services rendered before the filing of the complaint. The trial court denied the motion, and defendant did not file an interlocutory appeal.

Several months later, defendant filed a third motion for partial summary disposition, arguing that, under MCL 500.3145(1), plaintiffs could not recover benefits for any services that were rendered more than one year before the filing of the original complaint. The trial court denied the motion. Defendant filed an interlocutory application for leave to appeal, which was denied by the Court of Appeals. Unpublished order of the Court of Appeals, entered January 12, 2005 (Docket No. 259729). Defendant then filed a second application for leave to appeal in this Court, which was denied. 472 Mich 858 (2005).

After this Court denied leave to appeal, the parties stipulated the entry of a judgment that resolved their differences over the amounts of damages that plaintiffs would be able to recover over the various periods at issue. This judgment preserved defendant's right to appeal the trial court's adverse decisions

with regard to issues that were raised by either party in defendant's three motions for partial summary disposition.

Defendant then filed a claim of appeal. The Court of Appeals affirmed in part, reversed in part, and remanded for entry of an order of partial summary disposition in favor of defendant. Unpublished opinion per curiam of the Court of Appeals, issued November 21, 2006 (Docket No. 261736). The Court of Appeals held that this Court's decision in *Cameron v Auto Club Ins Ass'n*, 476 Mich 55; 718 NW2d 784 (2006), which affirmed the Court of Appeals decision in that case, was dispositive of defendant's claim that plaintiffs may not recover PIP benefits relating to any losses incurred more than one year before plaintiffs filed their original complaint. Moreover, it held that plaintiffs' fraud claim was subject to the one-year-back rule of MCL 500.3145(1) because the claim was nothing more than a no-fault claim couched in fraud terms. We granted plaintiffs' application for leave to appeal. 478 Mich 861 (2007).

## II. STANDARD OF REVIEW

Issues of statutory interpretation and other questions of law are reviewed de novo. *Devillers v Auto Club Ins Ass'n,* 473 Mich 562, 566-567; 702 NW2d 539 (2005). The grant or denial of a motion for summary disposition is also reviewed de novo. *McClements v Ford Motor Co*, 473 Mich 373, 380; 702 NW2d 166 (2005).

6

## III. ANALYSIS

### A. FRAUD ACTIONS AND ONE-YEAR-BACK RULE

The Michigan no-fault act, MCL 500.3145(1), provides, in relevant part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.* [Emphasis added.]

The one-year-back rule of this provision limits recovery of PIP benefits to those incurred within one year before the date on which the no-fault action was commenced. PIP benefits include "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

Plaintiffs argue that by alleging in their amended complaint that defendant fraudulently induced Strozewski to accept an unreasonably low compensation rate for her in-home attendant-care services, plaintiffs brought a common-law fraud claim that is distinct from a no-fault claim for benefits, and that such claim therefore is not subject to the one-year-back rule of MCL 500.3145(1). A fraud action is not subject to the one-year-back rule of MCL 500.3145(1) because the one-year-back rule applies only to actions brought under the no-fault act, and a

7

fraud action is a distinct and independent action brought under the common law. A fraud action is not an "action for recovery of [PIP] benefits payable under [the no-fault act] for accidental bodily injury." Rather, in the context of an insurance contract, a fraud action is an action for recovery of damages payable under the common law for losses incurred as a result of the insurer's fraudulent conduct. There is a distinction between claiming that an insurer has refused to pay no-fault benefits to its insureds and claiming that the insurer has defrauded its insureds. A fraud action is conceptually distinct from a no-fault action because: (1) a fraud action requires an insured to prove several elements that are different from those required in a no-fault action; (2) a fraud action accrues at a different time than a no-fault action; and (3) a fraud action permits an insured to recover a wide range of damages that are not available in a no-fault action.

To assert a no-fault claim, an insured must demonstrate that the insured is entitled to benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" without regard to fault, and that the insurer is obligated under an insurance contract to pay those benefits, but failed to do so timely. MCL 500.3105.[2] To assert an actionable fraud claim, on the other hand, an insured must demonstrate:

_____

[2] MCL 500.3105 provides:

(1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the

(continued . . .)

8

"(1) That [the insurer] made a material representation; (2) that it was false; (3) that when [the insurer] made it [the insurer] knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [the insurer] made it with the intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that [the plaintiff] thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." [*Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976), quoting *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919).]

A fraud claim is clearly distinct from a no-fault claim. First, a fraud claim requires proof of additional elements, such as deceit, misrepresentation, or concealment of material facts, and the substance of such claim is the insurer's wrongful conduct. Unlike a no-fault claim, a fraud claim does not arise from an insurer's mere omission to perform a contractual or statutory obligation, such as

---

(continued . . .)

ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

(2) Personal protection insurance benefits are due under this chapter without regard to fault.

(3) Bodily injury includes death resulting therefrom and damage to or loss of a person's prosthetic devices in connection with the injury.

(4) Bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant. Even though a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself.

its failure to pay all the PIP benefits to which its insureds are entitled. Rather, it arises from the insurer's breach of its separate and independent duty not to deceive the insureds, which duty is imposed by law as a function of the relationship of the parties.[3] Second, unlike an action for no-fault benefits, which arises when the insurer fails to pay benefits, an action for fraud arises when the fraud is perpetrated. *Hearn v Rickenbacker*, 428 Mich 32, 39; 400 NW2d 90 (1987). Finally, under a no-fault cause of action, the insureds can only recover no-fault benefits, whereas under a fraud cause of action, the insureds may recover damages for any loss sustained as a result of the fraudulent conduct,[4] which may include the equivalent of no-fault benefits, reasonable attorney fees, damages for emotional distress, and even exemplary damages. See *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239, 250-251; 531 NW2d 144 (1995); *Veselenak v Smith*, 414 Mich 567, 574; 327 NW2d 261 (1982); *Phinney v Perlmutter,* 222 Mich App 513, 527; 564 NW2d 532 (1997); *Clemens v Lesnek,* 200 Mich App 456, 463-464; 505 NW2d 283 (1993).

---

[3] "[T]he relationship between insurers and their insureds is 'sufficient to permit fraud to be predicated upon a misrepresentation.'" *Hearn v Rickenbacker*, 428 Mich 32, 39; 400 NW2d 90 (1987), quoting *Drouillard v Metropolitan Life Ins Co*, 107 Mich App 608, 621; 310 NW2d 15 (1981).

[4] "In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Phinney v Perlmutter*, 222 Mich App 513, 532; 564 NW2d 532 (1997).

Therefore, "[a]lthough mere allegations of failure to discharge obligations under [an] insurance contract would not be actionable in tort, where, as here, the breach of separate and independent duties are alleged, [the insureds] should be allowed an opportunity to prove [their] causes of action." *Hearn*, 428 Mich at 40 (citation omitted); see also *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 603-604; 374 NW2d 905 (1985) (tort actions survive in a contractual setting as long as the tort action is based on a breach of duty that is distinct from the contract); *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 422; 295 NW2d 50 (1980) (tort actions may survive when an insurer breaches a duty that existed "independent of and apart from the contractual undertaking"). "[T]ort liability abolished by the no-fault act is only such liability as arises out of the defendant's ownership, maintenance or use of a motor vehicle, not liability which arises out of other conduct . . . ." *Citizens Ins Co of America v Tuttle*, 411 Mich 536, 542; 309 NW2d 174 (1981); see also *Shavers v Attorney General*, 402 Mich 554, 623; 267 NW2d 72 (1978) (the no-fault act only "*partially* abolish[ed] the common-law remedy in tort for persons *injured by negligent motor vehicle tortfeasors* . . . ." [emphasis added]); *Bak v Citizens Ins Co of America*, 199 Mich App 730, 737-738; 503 NW2d 94 (1993) ("The enactment of the no-fault act did not extinguish common-law doctrines predating that legislation.").

That common-law fraud claims survive even where a self-contained system, such as the no-fault system, exists is further suggested by this Court's decisions in the context of the dramshop act. The dramshop act, MCL 436.1801 *et*

11

*seq.*, states that it provides "the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor." MCL 436.1801(10). In *Manuel v Weitzman*, 386 Mich 157, 164-165; 191 NW2d 474 (1971), overruled in part on other grounds by *Brewer v Payless Stations, Inc*, 412 Mich 673 (1982), this Court held that the dramshop act does not abrogate actions arising out of other unlawful conduct, and that tavern owners remain liable for injuries arising out of breach of other common-law duties.[5] Similarly, the no-fault act, which provides the remedy for injuries arising out of "the ownership, maintenance or use of a motor vehicle,"[6] MCL 500.3105(1), does not abrogate actions arising out of the breach of other common-law duties. Nothing in the no-fault act or other relevant law suggests that insurers are exempt from liability for

---

[5] This Court stated:

> We specifically approve the following statement in [*De Villez v Schifano*, 23 Mich App 72, 77; 178 NW2d 147 (1970)]:

> "We hold that the dramshop act affords the exclusive remedy for injuries arising out of an *unlawful sale, giving away,* or furnishing of intoxicants. *King* v. *Partridge*, 9 Mich App 540, 543 (1968). However, the act does not control and it does not abrogate actions arising out of unlawful or negligent conduct of a tavern owner other than *selling, giving away,* or *furnishing of intoxicants,* provided the unlawful or negligent conduct is recognized as a lawful basis for a cause of action in the common law." [*Manuel*, 386 Mich at 164-165.]

[6] We note that the question whether the no-fault act provides the *exclusive* remedy for injuries arising out of "the ownership, maintenance or use of a motor vehicle" is not relevant here because the insureds argue that their injuries arose out of the insurer's fraudulent conduct, not out of "the ownership, maintenance or use of a motor vehicle."

12

breaching other common-law duties by, for example, misrepresenting material facts and deceiving their insureds. The fact that the dispute would not have arisen in the absence of the no-fault insurance contract does not mean that the action brought by the insureds is a no-fault action.

Defendant argues, and the Court of Appeals appears to assert, that where the damages sought by the insureds are defined in terms of additional PIP benefits, the insureds' cause of action must necessarily be considered a "no-fault action couched in fraud terms." *Cooper v Auto Club Ins Ass'n*, unpublished opinion per curiam of the Court of Appeals, issued November 21, 2006 (Docket No. 261736), at 2. We respectfully disagree. Although the nature of the damages sought may constitute a useful indicator of the precise nature of the claim, this factor alone cannot be viewed as dispositive.

> The fact that a lawsuit seeks to recover a loss that was covered by an insurance policy, alone, should not dictate the nature of a plaintiff's claims . . . Although the contract of insurance may be one source of the insurer's obligation to pay the loss, the insurer may also be held liable for tortious conduct that is wholly separable from its purely contractual duties. [*Hearn*, 428 Mich at 40-41.]

Where fraudulent conduct results in the loss, or reduced payment, of PIP benefits, plaintiffs are entitled to seek damages for their entire loss, including the equivalent of the no-fault benefits. See *Phinney*, 222 Mich App at 532. It should not be seen as unusual that damages for fraud in a statutory context would be more than randomly related to lost statutory benefits. Simply because the insureds choose to

13

measure their loss from the fraudulent conduct, in whole or in part, on the basis of lost PIP benefits does not transform their claim into a no-fault claim.

Therefore, where an insured's claim arises not out of the insurer's mere failure to pay no-fault benefits, but out of the insurer's fraudulent misrepresentations, which might have ultimately led to payment of reduced no-fault benefits to the insureds, the courts are faced with a fraud claim, as opposed to a no-fault claim. Because fraud claims are independent of and distinct from no-fault claims, the one-year-back rule of the no-fault act simply does not apply.

Consequently, where the insureds state a fraud cause of action, this Court need not resort to its *equitable power* to prevent the one-year-back rule's application. In *Devillers*, 473 Mich at 590-591, this Court stated that, *in the context of a no-fault claim*, this Court may exercise its equitable power to avoid the application of the one-year-back rule if there are allegations of fraud, mutual mistake, or other unusual circumstances.[7] Because *Devillers* "concerns those statutory claims brought pursuant to the no-fault act," i.e., no-fault actions, *Devillers* is not pertinent in cases involving independent fraud actions. *West v Farm Bureau Gen Ins Co of Michigan (On Remand)*, 272 Mich App 58, 65; 723 NW2d 589 (2006). Thus, where the insureds state a common-law fraud claim, wholly separate from a no-fault claim, this Court need not consider an equitable

---

[7] In *Devillers*, however, this Court concluded that because there was "no allegation of fraud, mutual mistake, or any other 'unusual circumstance' . . . there [was] no basis to invoke the Court's equitable power." *Devillers*, 473 Mich at 591.

14

exception to the application of the one-year-back rule because the no-fault rules simply do not apply.[8]

## B. CAUTIONARY NOTES

While insureds are entitled to pursue common-law fraud claims against insurers and their remedies are not limited by the one-year-back rule of the no-fault act, we are not oblivious to the fact that, in the initial stages of litigation, some insureds may attempt to circumvent the application of the one-year-back rule to defeat insurers' motions for summary disposition. In order to limit such practices, to prevent wasteful or frivolous litigation, and to maintain the integrity of both the no-fault law and the common-law fraud cause of action, trial courts should exercise special care in assessing these types of fraud claims, and we offer the following guidance.

Because fraud must be pleaded with particularity, MCR 2.112(B)(1), and "is not to be lightly presumed, but must be clearly proved," *Palmer v Palmer*, 194 Mich 79, 81; 160 NW 404 (1916), "by clear, satisfactory and convincing" evidence, *Youngs v Tuttle Hill Corp*, 373 Mich 145, 147; 128 NW2d 472 (1964), trial courts should ensure that these standards are clearly satisfied with regard to all of the elements of a fraud claim. As stated above, the elements of fraud in the

---

[8] We note that, where a case involves a no-fault claim, this Court may still exercise its equitable power if there has been a determination that genuinely "unusual circumstances" such as fraud or mutual mistake were present. *Devillers*, *supra* at 590-591.

15

insurance context are: (1) that the insurer made a material representation; (2) that it was false; (3) that when the statement was made, the insurer knew that it was false, or the insurer made it recklessly without any knowledge of its truth and as a positive assertion; (4) that the insurer made the statement with the intention that it would be acted upon by the insureds; (5) that the insureds acted in reliance upon the statement; and (6) that the insureds consequently suffered injury. See *Hi-Way Motor Co*, 398 Mich at 336.

In particular, courts should carefully consider in this context whether insureds can satisfy the reliance factor. Insureds must "show that any reliance on [the insurer's] representations was reasonable." *Foreman v Foreman*, 266 Mich App 132, 141-142; 701 NW2d 167 (2005). Because fraud cannot be "perpetrated upon one who has full knowledge to the contrary of a representation," *Montgomery Ward & Co v Williams*, 330 Mich 275, 284; 47 NW2d 607 (1951), insureds' claims that they have reasonably relied on misrepresentations that clearly contradict the terms of their insurance policies must fail. One is presumed to have read the terms of his or her insurance policy, see *Van Buren v St Joseph Co Village Fire Ins Co*, 28 Mich 398, 408 (1874); therefore, when the insurer has made a statement that clearly conflicts with the terms of the insurance policy, an insured cannot argue that he or she reasonably relied on that statement without questioning it in light of the provisions of the policy. See also *McIntyre v Lyon,* 325 Mich 167, 174, 37 NW2d 903 (1949); *Phillips v Smeekens,* 50 Mich App 693, 697; 213 NW2d 862 (1973). In addition, insureds will ordinarily be unable to

16

establish the reliance element with regard to misrepresentations made during the claims handling and negotiation process, because during these processes the parties are in an obvious adversarial position and generally deal with each other at arm's length. See *Mayhew v Phoenix Ins Co*, 23 Mich 105 (1871) (Where the insured has the same knowledge or means of knowledge as the insurer, the insurer cannot be regarded as occupying any fiduciary relationship that would entitle the insured to rely on the insurer's representations, and a settlement hastily made with the insurer under such circumstances will not be set aside for fraud. Insureds are bound to inform themselves of their rights before acting, and, if they fail to do so, they themselves are responsible for the loss.); *Nieves v Bell Industries, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994) ("There can be no fraud when a person has the means to determine that a representation is not true."). However, when the process involves information and facts that are exclusively or primarily within the insurers' "perceived 'expertise' in insurance matters, or facts obtained by the insurer[s] in the course of [their] investigation, and unknown" to the insureds, the insureds can more reasonably argue that they relied on the insurers' misrepresentations. 14 Couch on Insurance 3d § 208:19, p 208-26; see also *Crook v Ford*, 249 Mich 500, 504-505; 229 NW 587 (1930); *French v Ryan*, 104 Mich 625, 630; 62 NW 1016 (1895); *Tabor* v *Michigan Mut Life Ins Co,* 44 Mich 324, 331; 6 NW 830 (1880).[9]

---

[9] In *Tabor*, the Court held that "[w]hile. . . a person cannot generally be
(continued . . .)

17

The courts should also carefully examine whether the insureds have established both that the statements are statements of past or existing fact, rather than future promises or good-faith opinions, *Hi-Way Motor Co*, 398 Mich at 337; *Danto v Charles C Robbins, Inc,* 250 Mich 419, 425; 230 NW 188 (1930); *Foreman*, 266 Mich App at 143, and that they are objectively false or misleading, *Hord v Environmental Research Institute of Michigan*, 463 Mich 399, 411; 617 NW2d 543 (2000). Further, the insureds must demonstrate that the misrepresentations were made with the intent to defraud, *Foreman*, 266 Mich App at 143, and that the insureds were injured as a consequence. *Hi-Way Motor Co*, 398 Mich at 336. The courts must distinguish between misrepresentations of fact, i.e., false statements of past or existing facts, and mere negotiation of benefits, i.e., the mutual discussion and bargaining preceding an agreement to pay PIP benefits.

Finally, as with any other action, if the courts conclude that the fraud claims were frivolous or interposed without an adequate basis or for improper purposes, appropriate sanctions should be considered. See MCR 2.114.

---

(continued . . .)
justified in acting solely on the statement of his legal rights by an adverse agent in insurance controversies," relief is warranted if the statements are "so mixed with unconscionable conduct as to stand differently." *Id*. at 331. Not only did the insurer misrepresent the applicable law regarding forfeiture of policies and pressure the ill insured to immediately comply with the insurer's demands without allowing him to obtain independent advice, but, critically, the insurer also misrepresented facts that were within the exclusive knowledge of the insurer, such as the actions taken by the insurance commissioner and by some of the insured's neighbors, which directly affected the surrender of the insured's policy. Thus, the plaintiff could recover under her fraud claim.

## III. CONCLUSION

Because under MCL 500.3145(1) the one-year-back rule applies solely to no-fault actions, and because a fraud action is not a no-fault action, but, rather, constitutes an independent and distinct action for recovery of damages under the common law for losses incurred as a result of the insurer's fraudulent conduct, we hold that a common-law action for fraud is not subject to the one-year-back rule. Therefore, we reverse in part the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

> Stephen J. Markman
> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.

CAVANAGH, J.  I concur in the result only.

> Michael F. Cavanagh

19

S T A T E   O F   M I C H I G A N

SUPREME COURT

AMYRUTH L. COOPER, by her Next Friend,
SHARON L. STROZEWSKI, AND LORALEE
A. COOPER, by her Next Friend, SHARON L.
STROZEWSKI,

      Plaintiffs-Appellants,

v                                    No. 132792

AUTO CLUB INSURANCE ASSOCIATION,

      Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J. (*concurring*).

I concur only in the result reached by the majority opinion. Specifically, because the one-year-back rule applies only to actions brought under the no-fault act, and because a fraud action is not a no-fault action—"action for recovery of personal protection insurance benefits payable under [the no-fault act] for accidental bodily injury," MCL 500.3145(1)—but, instead, is an independent action for recovery of damages payable under the common law for losses incurred as a result of the insurer's fraudulent conduct, I agree that the common-law cause of action for fraud is not subject to the one-year-back rule.

Therefore, I concur in the majority's decision to reverse in part the judgment of the Court of Appeals and to remand this matter to the trial court for further proceedings consistent with that decision.


Elizabeth A. Weaver
Marilyn Kelly

2