# STATE OF MICHIGAN

# COURT OF APPEALS

---

NORMAN J. STEVENS and DONAVON J.
BLACK,

        Plaintiffs-Appellants,

v

RASOR LAW FIRM and RACHEL EVE
WISLEY,

        Defendants-Appellees.

UNPUBLISHED
May 12, 2015

No.  319449
Oakland Circuit Court
LC No.  2013-133859-NM

---

Before:  BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Plaintiffs appeal the trial court's order that granted summary disposition to defendants under MCR 2.116(C)(10).  For the reasons stated below, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  FACTUAL BACKGROUND

In February 2008, plaintiffs' home was destroyed by fire.  Plaintiffs' Farm Bureau insurance policy afforded plaintiffs two types of payments for their loss: (1) cash value; and (2) replacement costs.[1]  The policy also included two limitation periods and conditions for the two types of payments.  First, the policy, in compliance with MCL 500.2833(1)(q),[2] specified that:

---

[1] The "replacement cost" of a house is the amount of money it would cost to replace the house at present-day costs, as opposed to costs when the house was built.

[2] MCL 500.2833(1)(q) requires that fire-insurance policies issued or delivered in Michigan "shall contain" a provision:

> That an action under the policy may be commenced only after compliance with the policy requirements.  An action must be commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer.  The

-1-

No suit or action can be brought against [Farm Bureau], unless there has been full compliance with all of the terms under this policy and the suit or action is started within one year after the date of the loss.

The time for starting an action is suspended from the time you notify us of the loss until we formally deny liability.

Second, Farm Bureau's loss-evaluation policy regarding replacement costs stated that Farm Bureau would

. . . pay no more than the actual cash value for [covered fire damages] unless:

a. actual repair or replacement is completed; or

b. the cost to repair or replace the damage is less than $2,500.

Pursuant to the above policy, Farm Bureau issued a check to plaintiffs for the cash value of their home, $215,000, in October 2008. And, after negotiations with plaintiffs that took place after extensive delays on plaintiffs' part, Farm Bureau agreed to pay an additional $164,792 in replacement costs for plaintiffs' house. Despite the provision in the loss-evaluation policy on replacement costs, Farm Bureau permitted a payment of "approximately $82,500" "once the dwelling is framed and closed in (foundation, floor, roof, and walls)," and expressed a willingness to "arrange for periodic draws for monies requested during the reconstruction process." The plaintiffs and Farm Bureau memorialized their agreement in a letter dated December 14, 2009, which was signed by plaintiffs and a Farm Bureau representative. Farm Bureau sent plaintiffs another letter on December 15, 2009 increasing the balance of replacement costs to $168,292, and specified that plaintiffs needed to begin construction of their home by May 1, 2010 to claim the benefits.

Despite these negotiations and Farm Bureau's willingness to assist them in the reconstruction of their home pursuant to the terms of their insurance policy, plaintiffs did not respond to Farm Bureau's December 15, 2009 letter, nor did they begin construction of their home by the May 1, 2010 deadline.

Indeed, as of May 2011, plaintiffs had not started construction of their house. Instead, on May 3, 2011, plaintiffs retained defendants Wisley and the Rasor Law Firm, after speaking with Wisley about whether Farm Bureau could set a construction deadline as a condition precedent to the payment of replacement-cost benefits. Pursuant to her discussions with plaintiffs, Wisley drafted a letter for plaintiffs to send to Farm Bureau, which protested the May 1, 2010 construction deadline mentioned in the December 15, 2009 letter. Rather than use Wisley's letter, plaintiff Stevens drafted and sent his own letter, dated May 25, 2011, to Farm Bureau that requested payment of the replacement costs so he could pay contractors to begin construction of his home. Farm Bureau responded on June 6, 2011, and denied plaintiffs' request for payment,

_____

time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability.

-2-

and noted that plaintiffs "did not respond [or] submit any documentation" to the December 15, 2009 letter, or begin construction of their home by May 1 as required by the insurance policy.

Plaintiffs did not take any action regarding Farm Bureau's denial of their claim for the February 2008 fire until June 29, 2012, when Stevens sent a letter to Farm Bureau again demanding $168,292 in payment for the replacement costs. Farm Bureau once more denied plaintiffs' request, and noted that plaintiffs had repeatedly failed to comply with the terms of their insurance policy on replacement costs.

## B. THE INSTANT CASE

On May 7, 2013, plaintiffs—who still had yet to begin construction on their home—filed this action against defendants Wisley and the Rasor Law Firm. They alleged that defendants committed legal malpractice because Wisley did not advise plaintiffs of MCL 500.2833(1)(q), which, as noted, requires that an action against a fire insurer be "commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer." Plaintiffs claimed that if defendants had informed them of MCL 500.2833(1)(q)'s mandate, they would have brought suit against Farm Bureau for the replacement costs.

Defendants moved for summary disposition, and argued that they could not be liable for legal malpractice because: (1) the substantive provisions of MCL 500.2833(1)(q) were explicitly contained in plaintiffs' insurance policy, of which plaintiffs were presumed, as a matter of law, to have knowledge; (2) any hypothetical claim against Farm Bureau for the replacement costs would have failed because plaintiffs did not begin construction on a new home within a reasonable time of claiming benefits, as required by Michigan case law and the policy plaintiffs held with Farm Bureau. The trial court agreed with defendants' arguments and granted summary disposition to defendants pursuant to MCR 2.116(C)(10).[3]

On appeal, plaintiffs argue that the trial court erred in its determination, and make the same arguments here as they did below.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Van v Zahorik*, 460 Mich 320, 326; 597 NW2d 15 (1999). Under MCR 2.116(C)(10), summary disposition is granted where there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). All affidavits, pleadings, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties is viewed "in the light most favorable to the party opposing the motion." *Id.*

---

[3] Though the trial court also granted summary disposition under MCR 2.116(C)(8), it considered documentary evidence beyond the pleadings, so we analyze the motion under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

## III. ANALYSIS

To establish a claim of legal malpractice, a plaintiff must show: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the cause in fact or proximate cause of an injury; and (4) the existence and extent of the injury alleged. *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994). To establish causation in an action for legal malpractice, a plaintiff must show that, but for the attorney's alleged malpractice, the plaintiff would have been successful in the underlying suit. *Id.* at 586. "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id.* (internal quotations and citations omitted). The plaintiff must prove a cause in fact by reasonable inference and not just by mere speculation and impermissible conjecture. *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 615; 563 NW2d 693 (1997).

Here, it is uncontested that plaintiffs and defendants had an attorney-client relationship. However, plaintiff has failed to show the existence of any of the other factors necessary to establish a claim for legal malpractice.

As the trial court correctly noted, defendants did not commit "negligence in [their] legal representation of the plaintiff." *Reinhart Co*, 444 Mich at 585. Defendants had no obligation to inform plaintiffs of the mandates of MCL 500.2833(1)(q), because defendants' insurance policy explicitly stated:

> No suit or action can be brought against [Farm Bureau], unless there has been full compliance with all of the terms under this policy and the suit or action is started within one year after the date of the loss.

> The time for starting an action is suspended from the time you notify us of the loss until we formally deny liability.

An insurance policy holder is responsible for knowledge of the terms of his policy, and is presumed to know those terms. *Rory v Continental Ins Co*, 473 Mich 457, 489-490 n 82; 703 NW2d 23 (2005).[4] Accordingly, plaintiffs should have known that they could not bring suit against Farm Bureau unless: (1) they had fully complied with the terms under the policy; and (2) they brought the suit within one year after the date of loss. Defendants had no obligation to inform plaintiffs of what they already knew as a matter of law, and their representation of plaintiffs in this respect therefore cannot be "negligent."[5]

---

[4] We note that an insurance-policy holder is presumed to know the terms of his policy even in cases where the insured claims to have not read the policy. See *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 415; 751 NW2d 443 (2008).

[5] Moreover, plaintiffs failed to bring suit against Farm Bureau within the one-year window specified by their policy, a contractual limitation of which, again, plaintiffs had knowledge. After Farm Bureau formally denied their claim for replacement costs on June 6, 2011, plaintiffs

Moreover, were we nonetheless to assume that defendants were negligent in their representation of plaintiffs, that negligent representation could not possibly have been the "proximate cause" of plaintiffs' "injury": the ultimate failure of any claim for the replacement costs against Farm Bureau. *Reinhart Co*, 444 Mich at 585. Plaintiffs' failure to adhere to the terms of their policy and December 2009 agreement with Farm Bureau—which required them to begin construction on their home by May 1, 2010 to receive replacement costs—would have caused any hypothetical claim against Farm Bureau to fail. As such, it is plaintiffs' actions, not defendants', that is the "proximate cause" of plaintiffs' "injury." *Id*.[6] Defendants did not commit legal malpractice, nor would any alleged malpractice have been the cause in fact or proximate cause of plaintiffs' damages, and plaintiffs' claim to the contrary is without merit.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad

---

took no action until over a year later, when they sent Farm Bureau a letter on June 29, 2012. One would think that, if plaintiff actually planned to pursue an action against Farm Bureau, or, at the least, wanted the replacement costs to construct a new home, plaintiffs would have contacted defendants immediately after the June 6, 2011 denial of benefits to commence suit against Farm Bureau. Of course, plaintiffs did not do so.

[6] In any event, plaintiffs' hypothetical lawsuit against Farm Bureau for the replacement costs would have failed for a related reason: Michigan law requires that, in the context of fire-insurance policies, "[w]hen no time for performance is specified in the contract, a 'reasonable time' is implied." *Smith v Mich Basic Property Ins Ass'n*, 441 Mich 181, 191 n 15; 490 NW2d 864 (1992). While what constitutes a reasonable time is normally a question of fact, the issue is a question of law where the facts are not in dispute. *S C Gray, Inc v Ford Motor Co*, 92 Mich App 789, 817; 286 NW2d 34 (1979). Here, the underlying facts are not in dispute. Even when providing an allowance for externalities outside plaintiffs' control, it is clear that plaintiffs' own actions (or inactions) resulted in the extreme and constant delays in starting construction of their home. Accordingly, plaintiffs' claim against Farm Bureau for the replacement costs would have also failed because plaintiffs did not begin construction of their home within a reasonable time. *Smith*, 441 Mich at 191 n 15. Defendants' representation had nothing to do with plaintiffs' failure to begin construction.