# STATE OF MICHIGAN

# COURT OF APPEALS

CHEMICAL TECHNOLOGY, INC.,

      Plaintiff-Appellant,

v

BERKSHIRE AGENCY, INC., doing business as
CAPITAL INSURANCE GROUP,

      Defendant-Appellee,

and

AMERICAN EMPIRE SURPLUS LINES,

      Defendant.

UNPUBLISHED
July 26, 2016

No. 326394
Wayne Circuit Court
LC No. 14-007723-CB

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Chemical Technology, Inc., appeals as of right the circuit court's February 20, 2015 opinion and order granting summary disposition to defendant Berkshire Agency, Inc. (d/b/a Capital Insurance Group) pursuant to MCR 2.116(C)(10). A stipulated order dismissing Chemical's claims against defendant American Empire Surplus Lines was entered on November 10, 2014, and American Empire, the insurer, is not involved in this appeal.

This negligence lawsuit arises out of fire damage that was sustained to a building owned by Chemical in Detroit, Michigan. According to Chemical, the building was completely destroyed, resulting in $5,239,041 in damage to the building, $1,170,052 in damage to the personal property inside of the building, and an undetermined amount of "business income interruption damages." Because Chemical was unable to obtain full compensation for the fire damage, it filed this lawsuit against Berkshire, alleging negligence and breach of contract. As it relates to Chemical's negligence claim, Chemical alleged that Berkshire owed it a duty to "properly advise Plaintiff regarding the types and amount of commercial insurance that should be purchased for its building and for its business personal property," properly advise plaintiff "regarding the purchase of business income interruption coverage," and properly advise plaintiff "on how the commercial insurance policy would respond in the event of a loss." Because Berkshire failed to do so, and because that failure caused the damage in this case, Chemical

-1-

alleged, it was entitled to "a judgment in its favor . . . in whatever amount it is deemed to be entitled, plus interest, costs, attorneys' fees and all consequential damages."

Berkshire subsequently moved for summary disposition pursuant to MCR 2.116(C)(10), arguing, in pertinent part, that Chemical could not prove the existence of a duty. Specifically, Berkshire asserted that it did not owe a duty to advise to Chemical, especially in light of the fact that Chemical never questioned the clear terms of the insurance policy at issue. Conversely, Chemical contended that Berkshire owed it a duty to advise for several reasons: (1) because Robert F. Moglia, Jr., a 25-percent shareholder and employee of Berkshire, admitted that doing so was his responsibility during a deposition, (2) because Berkshire was an independent insurance agent, and (3) because Berkshire and Chemical shared a special relationship under pertinent caselaw. The circuit court agreed with Berkshire, concluding, in pertinent part, that summary disposition pursuant to MCR 2.116(C)(10) was appropriate because Berkshire did not owe Chemical a duty to advise. This appeal followed.

A circuit court's decision on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether a duty exists is a question of law that is also reviewed de novo. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 26; 761 NW2d 151 (2008).

Summary disposition pursuant to MCR 2.116(C)(10) is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. In reviewing such a motion, this Court is required to review the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. "[T]he mere possibility that the claim might be supported by evidence produced at trial" "is insufficient under our court rules" to survive summary disposition. *Id*. at 121.

"A negligence claim requires that a plaintiff prove the following four elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, (3) causation, and (4) damages." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009). "Whether a duty exists is a question of law that is solely for the court to decide." *Harts v Farmers Ins Exch*, 461 Mich 1, 6; 597 NW2d 47 (1999). Generally, "insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage." *Id*. at 7. Instead, "[s]uch an agent's job is to merely present the product of his principal and take such orders as can be secured for those who want to purchase the coverage offered." *Id*. at 8. "However, as with most general rules, the general no-duty-to-advise rule . . . is subject to change when an event occurs that alters the nature of the relationship between the agent and the insured." *Id*. at 9-10. Under "the 'special relationship' test,"

> the general rule of no duty changes when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advise and the agent, though he need not, gives advise that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id*. at 10-11.]

-2-

In this case, the circuit court concluded that Berkshire had no duty to advise Chemical regarding the adequacy of its insurance coverage under *Harts*. Specifically, it concluded that the general no-duty-to-advise rule and none of the four exceptions set forth in the "special relationship" test applied. Thus, it granted Berkshire's motion. On appeal, Chemical argues that the circuit court's decision was erroneous for four reasons: (1) because Moglia admitted that advising Chemical regarding the adequacy of its insurance coverage was his responsibility, (2) because defendants stated that the circuit court could " 'assume . . . that Berkshire had a duty to advise Chemical Technology and to obtain adequate coverage' " in a lower court pleading, (3) because Berkshire was an independent insurance agency, and (4) because at least one of the exceptions set forth in the "special relationship" test applied. Because we disagree in all four respects, we affirm the circuit court's February 20, 2015 opinion and order granting summary disposition to Berkshire pursuant to MCR 2.116(C)(10).

First, we reject Chemical's argument that a duty arose because Moglia admitted that advising Chemical regarding the adequacy of its insurance coverage was his responsibility. Chemical does not provide any authority in support of this position. Thus, it is abandoned. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Indeed, while Chemical describes these "admissions" as "fatal," it does not cite to, and we are unable to find, any authority in support of Chemical's position that an after-the-fact, subjective admission of responsibility somehow creates a legal duty. It is difficult to imagine that, if the shoe were on the other foot (so to speak), Chemical would agree to be bound by Moglia's subjective beliefs had he denied responsibility. Therefore, we conclude that a duty did not arise merely because Moglia admitted believing that it was his responsibility to advise Chemical regarding the adequacy of its insurance coverage.

We are equally unpersuaded by Chemical's second argument—that the circuit court's decision should be reversed because defendants stated that the circuit court could " 'assume . . . that Berkshire had a duty to advise Chemical Technology and to obtain adequate coverage' " in a reply brief for purposes of its summary-disposition motion. While this claim is factually accurate, we see no reason why this apparent concession, alone, should require reversal under the facts and circumstances of this case. Indeed, Berkshire expressly challenged the existence of a duty in its summary-disposition motion, Chemical expressly responded to that challenge, both parties addressed the existence (or lack thereof) of a duty during oral argument, and the circuit court ultimately found that issue dispositive. Because the issue was extensively addressed by the parties, and in light of our ultimate conclusion, we discern no value in reversing the circuit court's summary-disposition order and remanding this matter for further proceedings despite the fact that, in our view, Berkshire is entitled to judgment in its favor as a matter of law. Therefore, we decline to do so.

The third argument raised by Chemical—that the circuit court erred in concluding that Berkshire did not owe plaintiff a duty because Berkshire was an independent insurance agency— presents a more complicated question. In *Harts*, our Supreme Court did not explicitly limit its holding to captive or exclusive, i.e., non-independent, insurance agents. Rather, when faced with "determin[ing] whether a licensed insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage[,]" it "h[e]ld that, except under very limited circumstances not present in this case, an insurance agent owes no such duty to an insured." *Harts*, 461 Mich at 2. On appeal, Chemical argues that the holding in *Harts* applies

only to captive or exclusive, i.e., non-independent, insurance agents. Berkshire, on the other hand, argues that the holding in *Harts* applies to both captive or exclusive insurance agents as well as independent insurance agents. Panels of this Court have agreed with both positions. Compare *Nokielski v Colton*, unpublished opinion per curiam of the Court of Appeals, issued January 4, 2011 (Docket No. 294143), and *Estate of Richardson v Grimes*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 2014 (Docket No. 312782), with *Deremo v TWC & Assoc, Inc*, unpublished opinion per curiam of the Court of Appeals, issued August 30, 2012 (Docket No. 305810), and *Micheau v Hughes & Havinga Ins Agency*, unpublished opinion per curiam of the Court of Appeals, issued May 21, 2013 (Docket No. 307914). We choose to follow *Nokielski* and *Richardson* in concluding that the general no-duty-to-advise rule applies to captive or exclusive, i.e., non-independent, insurance agents *and* independent insurance agents alike.

As stated above, our Supreme Court has unequivocally indicated that, generally, "insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage." *Harts*, 461 Mich at 7. Instead, insurance agents "merely present the product . . . and take such orders as can be secured for those who want to purchase the coverage offered." *Id*. at 8. This general no-duty-to-advise rule applies unless one of the four exceptions set forth in the "special relationship" test applies. *Id*. at 10-11. While, as Chemical aptly recognizes, there is some language in the *Harts* opinion that could lend itself to a conclusion that independent insurance agents are not subject to this general rule, see, e.g., *id*. at 7 (stating that "[b]ecause he was [the insurance company's] agent, he had no common-law duty to advise . . . ."), *id*. at 8 (stating that "an agent's job is to merely present the product of his principal . . . ."), *id*. (stating that "under common law, an insurance agent whose principal is the insurance company owes no duty to advise . . . ."), and *id*. at 9 (stating that "the general no-duty-to-advise rule" applies "where the agent functions as simply an order taker for the insurance company . . . ."), we are nevertheless convinced that, when read as a whole, the *Harts* decision supports only the opposite conclusion.

To begin, it cannot be overlooked that any discussion of the applicability of the general no-duty-to-advise rule to captive or exclusive insurance agents was specifically related to "the common-law duties inherent in an insurer-agent-insured relationship" *before* "consider[ing] the extent to which this relationship has been affected by certain Michigan statutes that are relevant to the establishment of an agent's duty." *Harts*, 461 Mich at 6. After discussing that common-law duty, our Supreme Court then explained that "[s]ound policy reasons also support the general rule that insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage[.]" *Id*. at 7. In our view, as panels of this Court have explained, "there is no reason that would preclude the *Harts* test from applying to both types of agents" based on this public-policy reasoning. *Nokielski*, unpub op at 4; *Richardson*, unpub op at 6 (adopting the reasoning in *Nokielski*). Equally supportive of this conclusion is our Supreme Court's discussion regarding the Legislature's intentional recognition of "the limited nature of the agent's role." *Harts*, 461 Mich at 8. It stated, "What is clear from these provisions is that the Legislature has long distinguished between insurance agents and insurance counselors, with agents being essentially order takers while it is insurance counselors who function primary as advisors." *Id*. at 8-9. This reasoning, like the public-policy reasoning, provides even further support for the conclusion that the general no-duty-to-advise rule applies to captive or exclusive agents as well as independent agents, and that is precisely what those same panels have explained. See

-4-

*Nokielski*, unpub op at 5 ("Just because an agent is independent, does not make him an insurance counselor, with a duty to advise."); *Richardson*, unpub op at 6 (adopting the reasoning in *Nokielski*). Indeed, as our Supreme Court ultimately concluded, "if such a duty is to be imposed on the [insurance agent], it should be imposed as a statutory one and not an implied judicial one." *Harts*, 461 Mich at 12 (citation and internal quotation marks omitted; alterations in original). We conclude the same here.

As it relates to Chemical's fourth argument—that the circuit court erred in concluding that Berkshire did not owe plaintiff a duty because one of the exceptions set forth in the "special relationship" test applies—we conclude that this argument is both abandoned and meritless. First, Chemical's argument is abandoned because Chemical merely concludes that "criteria #1 is met because Berkshire misrepresented the nature/extent of coverage by failing to advise Chemical that it was underinsured; and by failing to advise business-interruption and replacement cost coverage were available" and "criteria #4 is also met because Moglia admitted to assuming the duty to advise Chemical on the amount of limits for its building and to advise Chemical if that amount was inadequate" as well as because "Moglia raised Chemical's building and contents insurance limits in 2010, [thereby] assum[ing] the duty of setting those limits correctly." These conclusory statements are insufficient to warrant our review. *Peterson Novelties, Inc*, 259 Mich App at 14. Additionally, Chemical's argument ignores the fact that Chemical is charged with having read the insurance policy at issue, *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 394-395; 729 NW2d 277 (2006), and "insureds' claims that they have reasonably relied on misrepresentations that clearly contradict the terms of the insurance policies must fail," *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 415; 751 NW2d 443 (2008). See also *Zaremba Equip, Inc*, 280 Mich App at 39-40. Furthermore, we are unable to find any authority supporting the proposition that Moglia's after-the-fact admission of subjective responsibility or decision to raise building and contents insurance limits somehow constitutes an *express agreement or promise* to assume an additional duty. In short, there is simply nothing in the record to support a conclusion that any one of the four exceptions set forth in the "special relationship" test applies in this case.

Accordingly, because Berkshire did not owe Chemical a duty to advise and none of the exceptions set forth in the "special relationship" test were applicable, the circuit court correctly granted summary disposition to Berkshire pursuant to MCR 2.116(C)(10).

Affirmed. Berkshire, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

-5-